**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Virgil Mendel PAYTON, a/k/a Virgil Macon, Defendant–Appellant.**

**No. 93–5515.**

United States Court of Appeals, Fourth Circuit.

Argued March 10, 1994.

Decided June 23, 1994.

Michael Patrick O'Connell, Asst. Federal Defender, Charleston, SC (argued), for appellant.

Benjamin A. Hagood, Jr., Asst. U.S. Atty., Charleston, SC (argued) (J. Preston Strom, Jr., U.S. Atty., J. Brady Hair, Asst. U.S. Atty., on brief), for appellee.

Before ERVIN, Chief Judge, and WILKINS and NIEMEYER, Circuit Judges.

Affirmed by published opinion. Chief Judge ERVIN wrote the opinion, in which Judge WILKINS and Judge NIEMEYER joined.

**OPINION**

ERVIN, Chief Judge.

Appellant Virgil Mendel Payton ("Payton") was convicted of being a felon in possession

of a firearm in violation of 18 U.S.C. § 922(g)(1). Section 2K2.1(a)(2) of the United States Sentencing Guidelines ("U.S.S.G.") provides for a penalty enhancement if the defendant has two previous felony convictions of a "crime of violence." The district court determined that Payton's prior conviction for involuntary manslaughter constituted a "crime of violence" as defined in U.S.S.G. § 4B1.2, and, therefore, qualified as a predicate crime under U.S.S.G. § 2K2.1(a)(2). On appeal, Payton assigns error to the district court's determination that involuntary manslaughter is a "crime of violence" under § 4B1.2. Finding no error in the district court's conclusion, we affirm Payton's sentence.

## I.

On June 13, 1992 two Charleston police officers responded to a call from the victim of an attempted armed robbery at the intersection of Line and Hagood Streets in Charleston, South Carolina. The officers were standing on the corner talking with the victim when Payton rode by on a bicycle. The victim identified Payton as one of the individuals who attempted to rob him, and the officers subsequently stopped and frisked him. Payton was found to be in possession of a pistol. The indictment filed in the District of South Carolina on September 9, 1992 charged that Payton, having been previously convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess a firearm in violation of 18 U.S.C. § 922(g)(1).

On November 2, 1993 Payton appeared before the district court for a suppression hearing on the legality of the stop and frisk. The district court ruled that the search did not violate the Fourth Amendment. On November 4, 1992 Payton entered a conditional plea of guilty pursuant to Fed.R.Crim.P. 11(a)(2) of violating 18 U.S.C. § 922(g).

United States Sentencing Guidelines § 2K2.1(a)(2), which applies to convictions under 18 U.S.C. § 922(g), provides a penalty enhancement for those defendants with two previous felony convictions of either a crime of violence or a controlled substance offense as those terms are defined in § 4B1.2 of the Guidelines. Payton's sentencing report revealed that he previously had been convicted of involuntary manslaughter in South Carolina in 1991 and sentenced to three years imprisonment. Payton also had been convicted of strong arm robbery in South Carolina in 1988.

At a hearing, Payton contested the issue of whether his previous conviction for involuntary manslaughter was a crime of violence under § 4B1.2 of the Guidelines. Over Payton's objection, the district court judge determined that both of Payton's previous crimes were crimes of violence, and that the base offense level for Payton was level 24 pursuant to § 2K2.1(a)(2). After adjusting his offense level for acceptance of responsibility, the district court found Payton's offense level to be 21 with a Criminal History Category of IV, which has a range of 57–71 months. The district court sentenced Payton to 64 months.

Payton appeals the district court's determination that involuntary manslaughter as defined by South Carolina law is a crime of violence under § 4B1.2 of the Guidelines. Had Payton's conviction for involuntary manslaughter not been found to be a crime of violence under § 4B1.2, his adjusted offense level would have been 19, which, with a Criminal History Category IV, has a range of 46–57 months.

## II.

Section 4B1.2 of the Guidelines defines "crime of violence" to be:

any offense under federal or state law punishable by imprisonment for a term exceeding one year that—(1) has *as an element* the use, attempted use, or threatened use of physical force against the person of another, or (ii) is burglary of a dwelling, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*

U.S.S.G. § 4B1.2(1) (emphasis added).

The government argues that manslaughter categorically is a crime of violence because it "involves conduct that presents a serious potential risk of physical injury to another" as

defined in § 4B1.2(1)(ii). Payton, on the other hand, argues that (1) involuntary manslaughter is not a crime of violence because it is not a "specific intent" crime, and (2) the catchall phrase of U.S.S.G. § 4B1.2(1)(ii) applies only to crimes against property. Payton's arguments are based on the legislative history of 18 U.S.C. § 924(e), which is the statute from which § 4B1.2 is derived.

We find that reference to the legislative history of 18 U.S.C. § 924(e) is unnecessary to construe § 4B1.2 because application note 2 of the Guidelines commentary for § 4B1.2 directly addresses the question of whether manslaughter is a "crime of violence":

> "Crime of violence" includes murder, *manslaughter*, kidnapping, aggravated assault.... Other offenses are included where (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (*i.e.*, expressly charged) in the count of which the defendant was convicted involved use of explosives ... *or, by its nature, presented a serious potential risk of physical injury to another.* Under this section, the conduct of which the defendant was convicted is the focus of the inquiry.

U.S.S.G. § 4B1.2, comment. n. 2 (emphasis added). In *Stinson v. United States*, — U.S. ——, 113 S.Ct. 1913, 1917–18, 123 L.Ed.2d 598, 606–07 (1993), the Supreme Court ruled that Guidelines commentary that is interpretive or explanatory controls, so long as it is not clearly inconsistent with the Guidelines or unconstitutional. Therefore, while application note 2 of the Guidelines commentary does not differentiate between involuntary and voluntary manslaughter, we conclude that it includes both.

The Ninth Circuit is the only circuit to consider whether involuntary manslaughter is an offense that "by its nature, involves a substantial risk that physical force may be used in the course of committing the offense." In *United States v. Springfield*, 829 F.2d 860 (9th Cir.1987), the Ninth Circuit considered whether involuntary manslaughter as defined in a Montana statute is a crime of violence under 18 U.S.C. § 924(c)(3), which is identical to U.S.S.G. § 4B1.2 (without the commentary and application notes). In the context of this § 924(c) case, the Ninth Circuit found that involuntary manslaughter does, in the sense intended in the statute, carry with it the "risk" of physical force, and therefore held that

> involuntary manslaughter, which "by its nature" involves the death of another person, is highly likely to be the result of violence. It thus comes within the intent, if not the precise wording of section 924(c)(3)[ (B) ].

*Id.* at 863.

### III.

Accordingly, we affirm the district court's sentence based on its finding that Payton's prior involuntary manslaughter conviction constituted a "crime of violence."

*AFFIRMED.*