UNITED STATES of America,
Plaintiff–Appellee,

v.

Shawn D. RUTHERFORD,
Defendant–Appellant.

No. 94–3130.

United States Court of Appeals,
Seventh Circuit.

Argued March 1, 1995.

Decided May 2, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied June 6, 1995.

---

Robert T. Coleman, Asst. U.S. Atty. (argued), Crim. Div., Fairview Heights, IL, for plaintiff-appellee.

Lee T. Lawless (argued), Office of Federal Public Defender, St. Louis, MO, for defendant-appellant.

Before CUMMINGS, EASTERBROOK, and ROVNER, Circuit Judges.

CUMMINGS, Circuit Judge.

Shawn D. Rutherford pled guilty to bank robbery, a violation of 18 U.S.C. § 2113(a), and possession of a firearm by a felon, a violation of 18 U.S.C. § 922(g). The district court found that Rutherford had two previous convictions for crimes of violence, rendering him a career offender under U.S.S.G. § 4B1.1.[1] The career offender guideline gave Rutherford an offense level of 29 and a criminal history category of VI, yielding a sentencing range of 151 to 188 months. If Rutherford had not qualified as a career offender, he would have had an offense level of 21 and a criminal history category of V, resulting in a sentencing range of 70 to 87 months. The district court imposed a sentence of 188 months of imprisonment and three years of supervised release.

On appeal, Rutherford argues that his 1993 conviction in an Alabama state court for first-degree assault does not qualify as a crime of violence.[2] He was convicted of assault for

---

1. Section 4B1.1 states that "A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense."

2. Rutherford's other crime of violence was a third-degree burglary also committed in Alabama in 1993. Rutherford does not contest the district

"driving a motor vehicle under the influence of alcohol and causing serious bodily injury to the person of another with the motor vehicle." Presentence Report at 9.[3] Rutherford contends that the definition of crime of violence under the career offender guideline does not encompass vehicular assault.

## I. Definition of "Crime of Violence" Under the Career Offender Guideline

Section 4B1.2 of the Guidelines defines "crime of violence" for the purposes of the career offender guideline. Under § 4B1.2(1)

"The term 'crime of violence' means any offense under federal or state law punishable by imprisonment for a term exceeding one year that—

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(ii) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."

Application Note 2 to § 4B1.2 requires that we limit our inquiry to "the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted." Application Note 2; *United States v. Lee*, 22 F.3d 736, 738 (7th Cir.1994).[4]

First-degree assault is a felony in Alabama, Ala.Code § 13A–6–20(b), and Rutherford received a sentence of five years of imprisonment, although he only served nine months. The offense at issue is not an offense enumerated in § 4B1.2(1)(ii) or in Application Note 2.[5] Thus, we must determine whether Rutherford's offense involved the "use, attempted use, or threatened use of physical force" under § 4B1.2(1)(i) or whether it presented "a serious potential risk of physical injury" under § 4B1.2(1)(ii).

## II. Use of Force Under § 4B1.2(1)(i)

■ The government does not argue that Rutherford's offense involved the "use, attempted use, or threatened use of physical force against ... another." Still, the argument that Rutherford used force by injuring another person in a drunk driving accident merits discussion. We begin, as we must when interpreting any statute or guideline, with the plain language of § 4B1.2(1)(i). *United States v. Rosado*, 866 F.2d 967, 969 (7th Cir.1989).

Rutherford argues that the word "use" implies an intentional act rather than the mere application or exertion of force. The common understanding of the word "use" supports this view. "Use" is defined as "[t]he act of employing a thing for any (esp. a profitable) purpose." *The Oxford English Dictionary*, 2d ed. vol. XIX at 350 (Clarendon Press 1989). Force is exerted in many instances where it is not employed for any particular purpose. For example, earthquakes and avalanches involve the exertion of a tremendous amount of force. Such disasters, however, are freaks of nature; we can identify no intelligence or purpose behind them. Referring to a randomly occurring avalanche as a "use" of force would torture the English language. Likewise, a drunk driving accident is not the result of plan, direction, or purpose but of recklessness at worst and misfortune at best. A drunk driver who injures a pedestrian would not describe the incident by saying he "used" his car to hurt someone. In ordinary English,

---

court's finding that the burglary was a crime of violence.

**3.** Under Alabama law, "A person commits the crime of assault in the first degree if ... (5) While driving under the influence of alcohol or a controlled substance or any combination thereof ... he causes serious bodily injury to the person of another with a motor vehicle." Ala.Code § 13A–6–20(a)(5).

**4.** If necessary to resolve an ambiguity in the charging document, the courts may also, in some circumstances, examine the presentence report,

plea agreement, or factual findings of the sentencing court. *See United States v. Sebero*, 45 F.3d 1075, 1078 (7th Cir.1995), *citing United States v. Smith*, 10 F.3d 724, 733–34 (10th Cir. 1993).

**5.** Application Note 2 states that "murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling" qualify as crimes of violence. The government does not argue that the conviction at issue was an aggravated assault.

the word "use" implies intentional availment.[6] No availment of force in order to achieve an end is present in a drunk driving accident. Thus under a pure plain language approach, one would be hard-pressed to argue that Rutherford's accident involved the use of force.

Consequently, we are aware of no cases holding that anything less than an intentional act may qualify as a "use" of force under § 4B1.2(1)(i). The sparse authority that exists supports the plain language reading. *See United States v. Young,* 990 F.2d 469, 471 (9th Cir.1993) (discussing whether possession of firearm in prison is crime of violence under § 4B1.2: "An intent to use the object in a violent manner is not a required element of the offense. Clearly, then, the statutory definition of the crime does not contain as an element the 'use, attempted use, or threatened use of physical force.' ") (citation omitted), *cert. denied,* — U.S. —, 114 S.Ct. 276, 126 L.Ed.2d 226 (1993); *United States v. Parson,* 955 F.2d 858, 866 (3rd Cir.1992) (comparing definitions of crime of violence in § 4B1.2 and 18 U.S.C. § 16: "Use of physical force is an intentional act, and therefore ... [§ 4B1.2(1)(i) ] requires specific intent to use force.").

In addition, the structure of § 4B1.2 supports the view that the "use" of force implies an intentional act. Section 4B1.2(1) divides the definition of crime of violence into two prongs. The first prong discusses intentional acts, while the second prong discusses acts with a mental state of less than intent.

Section 4B1.2(1)(i) (Prong I) classifies crimes involving the "use, attempted use, or threatened use of physical force" as crimes of violence. Attempts and threats, the acts grouped with the "use" of force in Prong I, are both intentional acts. Under the common law, an attempt "include[s] a specific intent to commit the unlawful act." *Braxton v. United States,* 500 U.S. 344, 351 n. **, 111 S.Ct. 1854, 1859 n. **, 114 L.Ed.2d 385 (1991); *see also* M. Cherif Bassiouni, *Substantive Criminal Law* ch. 5 § 2.2.1 at 205 (Charles C. Thomas 1978) ("To be charged with attempt, a person must possess the intent to commit a specific crime"); Wayne R. LaFave and Austin W. Scott, Jr., *Substantive Criminal Law* § 6.2 at 24 (West 1986) ("The mental state required for the crime of attempt ... is an intent to commit some other crime."). Thus attempted use of force requires an intentional act. Likewise, a threatened use of force must be intentional; one cannot accidentally make a threat.[7] Section 4B1.2(1)(i) places threats and attempts, both intentional acts, alongside "use," which under *Young, Parson,* and its ordinary meaning also implies an intentional act. This grouping together of different forms of intentional conduct demonstrates that § 4B1.2(1)(i) was meant to address intentional acts only.

The Sentencing Commission recognized, however, that many criminal acts with a mental state of less than an intent to use force should qualify as violent crimes. Thus, the Commission added § 4B1.2(1)(ii) (Prong II), which classifies as a crime of violence any offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another." *See* § 4B1.2(1)(ii) (often referred to as the "otherwise" clause). Sections 4B1.2(1)(i) and (ii) work together; intentional acts are analyzed under subsection (i), while reckless and negligent acts are analyzed under the "otherwise" clause in subsection (ii).[8] If the word "use" in subsection (i) included the reckless or negligent

---

**6.** "Use implies availing oneself of something as a means or instrument to an end." *Webster's Ninth New Collegiate Dictionary* at 1299 (1986).

**7.** A threat is defined as "[a] communicated intent to inflict physical or other harm on any person or on property." *Black's Law Dictionary, 5th ed.* at 1327 (West 1979). The common law treats threats as a form of assault. An actor is liable for a threat if he "intentionally puts another in apprehension of an imminent and harmful or offensive contact, ... unless the command is one

which the actor is privileged to enforce by the infliction of the threatened contact or by a threat to inflict it." Restatement (Second) of Torts, § 30 (ALI 1965).

**8.** Offenses that do not include the use of force as an element but that may, by their nature, create an inherent risk that force will be used (*e.g.,* burglary and escape) are also analyzed under subsection (ii).

exertion of force, the "otherwise" clause would often be redundant.[9] In many cases, subsections (i) and (ii) would overlap rather than work together. In light of *Young, Parson,* and the plain meaning of "use," we are persuaded that the Commission intended subsections (i) and (ii) to complement rather than compete with each other.

Finally, defining any negligent or reckless criminal act that results in injury as a "use" of force (and thus a crime of violence) creates some disturbing consequences. Namely, it classifies criminals who engage in low-risk activity but unluckily manage to hurt someone as violent offenders. For instance, if a speeding driver causes an accident and is convicted of vehicular assault, he would qualify as a violent offender under subsection (i) even though the risks of mere speeding would probably not be deemed "serious" under subsection (ii). This creates a sense of arbitrariness: if a speeder barely avoids an accident, he is not violent offender, but if the same speeder is not so fortunate and hits someone, he is suddenly transformed into a violent criminal. Section 4B1.2 does not endorse such an arbitrary scheme.[10] Thus Rutherford's first-degree assault conviction did not involve a "use" of force under § 4B1.2(1)(i).

### III.  The "Otherwise" Clause

■ Next, we must determine whether Rutherford's conduct presented a "serious potential risk of physical injury to another" under the otherwise clause.[11] The government asserts that drunk driving creates a serious risk of injury and thus falls squarely within the plain language of § 4B1.2(1)(ii). Rutherford makes two arguments in response. First, he contends that crimes of pure recklessness should not be considered crimes of violence. In the alternative, he argues that his conduct did not create a "serious potential risk of physical injury to another."

■ We decline to accept Rutherford's argument that crimes of recklessness may never constitute crimes of violence under the "otherwise" clause. Certain reckless conduct is just as dangerous as intentional conduct, and the Sentencing Commission obviously intended some dangerous, reckless criminal acts to qualify as crimes of violence. *See United States v. Rutledge,* 33 F.3d 671, 674 (6th Cir.1994) (conviction for reckless endangerment where defendant fired shot in direction of co-worker held "crime of violence" under § 4B1.2: although defendant claimed shot was fired in jest, conduct was "at least reckless ... [and] obviously placed ... [the co-worker] in imminent danger of serious injury"), *cert. denied,* —— U.S. ——, 115

---

9.  If negligent or reckless activity resulted in injury, the conduct would be classified as a "use" of force, making the serious risk analysis superfluous.

10.  Nor is the arbitrariness here the result of the underlying state law. Even if the state in this hypothetical punished speeding and vehicular assault alike, only vehicular assault would qualify as a crime of violence under § 4B1.2. Moreover, how any given state organizes its criminal code should not affect our determination of what constitutes a crime of violence. A state may decide to punish vehicular assault more severely than speeding as a form of retribution for the harm done. This does not, however, make a person convicted of vehicular assault any more violent or dangerous than an ordinary speeder for the purposes of § 4B1.2.

11.  Rutherford contends that the Sentencing Commission adopted a definition of crime of violence in § 4B1.2(1)(ii) broader than that envisioned by Congress when it drafted the career offender statute, 28 U.S.C. § 994(h). Even if this is true, the Sentencing Commission has the au-

thority to adopt a broader definition of career offenders for the purposes of the Guidelines. Congress' delegation of authority to the Commission to set sentencing ranges does not end with § 994(h). 28 U.S.C. § 994(d)(10) grants the Commission general authority to consider the relevant criminal history of offenders. Section 994(i) commands that the Guidelines "specify a sentence to a substantial term of imprisonment ... [where] the defendant—(1) has a history of two or more prior ... felony convictions for offenses committed on different occasions." In addition, the legislative history states that §§ 994(h) and 994(i) are "not necessarily intended to be an exhaustive list of the types of cases in which the guidelines should specify a substantial term of imprisonment, nor of types of cases in which terms at or close to authorized maxima should be specified." S.Rep. No. 98–225, 98th Cong., 2nd Sess. 176 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3359. Section 994(h) identifies a minimum number of cases in which near-maximum terms of imprisonment are mandated; the Commission is free to conclude that other situations warrant substantial terms as well. *See Parson,* 955 F.2d at 867.

S.Ct. 1258, 131 L.Ed.2d 138 (1995); *Parson,* 955 F.2d at 861, 873 (defendant's prior conviction for first-degree reckless endangering, where, "while shoplifting meat from a store ... [defendant] 'pushed and slapped' a store clerk," constituted a crime of violence under § 4B1.2). A court must, however, tread carefully when interpreting the "otherwise" clause. "Conjecture" or "speculation" about possible harm is not sufficient to create a crime of violence under § 4B1.2; instead, there must be evidence that the crime, by its nature, presents a substantial risk or an "affirmative indication" in the indictment or information that the defendant engaged in conduct presenting a serious risk of physical injury. *Lee,* 22 F.3d at 740–41. Accordingly, it was held in *Lee* that "theft from the person of another" (*e.g.,* pick-pocketing or purse-snatching) does not constitute a crime of violence under § 4B1.2(1)(ii), for the risk of injury to the victim is "little more than conjecture, and such speculation is not a sufficient basis ... to hold that the conduct ... is a 'crime of violence.'" *Id.* at 741.[12]

■ The government argues that driving under the influence of alcohol always presents a serious risk of injury to another. "'Drunk drivers cause an annual death toll of over 25,000 and in the same time span cause nearly one million personal injuries and more than five billion dollars in property damage.'" *Michigan Department of State Police v. Sitz,* 496 U.S. 444, 451, 110 S.Ct. 2481, 2485–86, 110 L.Ed.2d 412 (1990) (footnote omitted), *quoting* 4 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 10.8(d), p. 71 (2d ed. 1987). Furthermore, Rutherford's decision to drive while intoxicated resulted in serious injury to another person in this case, and the government contends that this fact conclusively

demonstrates that his conduct posed a serious risk to others.

This Court has never determined whether a vehicular assault committed by a drunk driver or any similar offense constitutes a crime of violence under § 4B1.2. Nor, to the best of our knowledge, has any other court. The Fourth Circuit has held that involuntary manslaughter is a crime of violence, *United States v. Payton,* 28 F.3d 17, 19 (4th Cir. 1994), *cert. denied,* ―― U.S. ――, 115 S.Ct. 452, 130 L.Ed.2d 361 (1994), and the Ninth Circuit has held that vehicular manslaughter is a crime of violence under an old version of the guideline. *United States v. O'Neal,* 937 F.2d 1369, 1375 (9th Cir.1990). However, both the current Application Notes and the ones in effect when *O'Neal* was decided specifically list manslaughter as a crime of violence. U.S.S.G. § 4B1.2, Application Note 2; U.S.S.G. Appendix C, Amendment 268 (Amending Application Notes).[13] Thus neither *Payton* nor *O'Neal* provides us with any assistance in the present case.

We must therefore determine as a matter of first impression whether drunk driving presents a serious risk of physical injury under the "otherwise" clause. The government urges that we need not reach this question, because an element of Rutherford's assault conviction was that he caused "serious bodily injury" to another person. Ala. Code § 13A–6–20(a)(5). Seemingly, the risk is 100% that someone convicted of assault under this Alabama provision will cause physical injury to another, because physical injury is an element of the offense. This argument, however, confuses the analysis under § 4B1.2(1)(i) with that under § 4B1.2(1)(ii). Subsection (i) requires courts to look at the elements of the offense. Subsection (ii), however, makes no mention of

---

**12.** In contrast to *Lee,* the First Circuit has held that larceny from a person is a crime of violence under § 4B1.2. *United States v. De Jesus,* 984 F.2d 21, 25 (1st Cir.1993); *United States v. McVicar,* 907 F.2d 1, 3 (1st Cir.1990). The circuits are also split over whether burglary of a building (not a dwelling) constitutes a crime of violence under § 4B1.2. *See United States v. Jackson,* 22 F.3d 583, 585 (5th Cir.1994) (burglary of a building not crime of violence because it does not always create "a substantial risk that force will be used"); *United States v. Smith,* 10 F.3d 724, 733 (10th Cir.1993) (burglary· of non-dwelling

not crime of violence under § 4B1.2: "otherwise" clause must be narrowly construed); *United States v. Fiore,* 983 F.2d 1, 4–5 (1st Cir.1992) (conspiracy to break and enter commercial structure is crime of violence under the "otherwise" clause), *cert. denied,* ―― U.S. ――, 113 S.Ct. 1830, 123 L.Ed.2d 458 (1993).

**13.** The *O'Neal* opinion does not specifically mention that manslaughter is enumerated as a crime of violence in the Application Notes.

the statutory elements *per se*. Rather, subsection (ii) focuses on the *conduct* involved in the offense; the sole concern is with the actions of the offender. It is necessary to separate the offender's actions from the effect of his actions. The "otherwise" clause in § 4B1.2(1)(ii) requires us to discuss the conduct that creates the risk of physical injury (*i.e.*, driving while intoxicated), not the effect of that conduct (*i.e.*, causing serious bodily injury to another). To say that Rutherford's conduct created a serious risk of injury because he in fact injured another person is nonsensical. Injury may occasionally result from conduct that presents a minimal risk, and the fact that an injury occurred will not automatically convert, for instance, a case of minor neglect into a crime of violence (*cf.* Part II, *supra*). Thus we must determine whether drunk driving—the act that Rutherford engaged in as opposed to the effect of his act—creates a serious risk of physical injury to another.

Drunk driving is a reckless act, perhaps an act of gross recklessness. Any drunk driver who takes to the road should know he runs a risk of injuring another person. The extent of the risk will of course vary from case to case, depending on how intoxicated the driver is, how far he drives, how fast he drives, and how many other drivers and pedestrians are sharing the road with him. But these facts are not before us in the case at hand, nor are they likely to be in subsequent cases, for *Lee* and Application Note 2 limit our consideration to the conduct expressly charged in the indictment or information. Regardless of the details, however, it is hardly surprising that Rutherford's decision to drive while intoxicated resulted in physical injury to another person. Similarly, the defendant in *Rutledge* should not have stood in amazement had his bullet, even if fired in jest, struck an unintended target. Our laws often impose severe penalties on people who engage in reckless activity that is also highly dangerous, and with good reason. "[R]eck-

less indifference to the value of human life may be every bit as shocking to the moral sense as an 'intent to kill.'" *Tison v. Arizona*, 481 U.S. 137, 157, 107 S.Ct. 1676, 1688, 95 L.Ed.2d 127 (1987) (holding death penalty constitutional for felony with mental state of reckless indifference that results in murder).

By driving while intoxicated, Rutherford "present[ed] a serious potential risk of physical injury to another." The dangers of drunk driving are well-known and well documented. Unlike other acts that may present some risk of physical injury, such as pickpocketing (*cf. Lee*) or perhaps child neglect or certain environmental crimes like the mishandling of hazardous wastes or pollutants, the risk of injury from drunk driving is neither conjectural nor speculative. Driving under the influence vastly increases the probability that the driver will injure someone in an accident. Out of the more than 34,000 fatal traffic accidents in 1992, 36.1 percent involved a driver with a blood alcohol concentration (BAC) of over .10 percent, and another 9 percent involved a driver with a BAC of between .01 and .09 percent. Statistical Abstract of the United States, 114th ed., Table 1016, p. 633 (1994).[14] Drunk driving, by its nature, presents a serious risk of physical injury, and the courts have held that other crimes that often lead to violence or injury are crimes of violence under the "otherwise" clause. *Cf. United States v. Gosling*, 39 F.3d 1140, 1142 (10th Cir.1994) (escape from prison is a crime of violence under § 4B1.2(1)(ii): although not every escape results in violence, "escape ... is a powder keg ... [and] violence could erupt at any time."); *United States v. Lonczak*, 993 F.2d 180, 181–82 (9th Cir.1993) (child stealing, defined as "enticing away any minor child"—"forcibly" or "fraudulently," is a crime of violence even though it does not necessarily require an exertion of force). Drunk driving is a reckless act that often results in injury, and the risks of driving while intoxicated are well-known. This is sufficient to satisfy the "serious risk" stan-

14. Neither party presented statistics on what percentage of drunk driving episodes result in injury, nor did we find any in our own research. In addition, the reliability of any such estimates would be open to serious question, as it may be impossible to estimate accurately how many epi-

sodes of drunk driving occur in any given day, week, month, or year. Even if available, this data, while useful, would not prove decisive; the "otherwise" clause sets no statistical threshold for seriousness, nor would picking an arbitrary number (*e.g.*, 10%, 20%, etc.) be appropriate.

dard of the "otherwise" clause.[15] Thus Rutherford's Alabama conviction for first-degree assault qualifies as a crime of violence under § 4B1.2(1)(ii).[16]

## IV. Conclusion

While it is somewhat troubling that felony drunk driving qualifies as a crime of violence under the "otherwise" clause,[17] drunk driving is undoubtedly a serious offense. *State v. Michalski*, 221 Neb. 380, 377 N.W.2d 510, 520 (1985) ("We have no difficulty concluding ... [that drunk driving] is a serious offense").[18] It is not, however, normally referred to or sentenced as a crime of violence. *LaBauve v. State*, 618 So.2d 1187 (La.App. 1993) ("LaBauve was arrested for drunk driving which is not a violent crime."). We share the concern of the *Parson* court that the "otherwise" clause may cause offenders who never intended to harm another person to be sentenced as career criminals—an effect that perhaps the Sentencing Commission

did not foresee.[19] We invite the Commission to re-evaluate its definition of crime of violence and to determine whether every person convicted of felony drunk driving should therefore have one of the two prior convictions for a crime of violence necessary for career offender status. The role of the courts, however, is to enforce the Guidelines, and the plain language of the "otherwise" clause encompasses Rutherford's assault conviction. Thus the decision of the district court is

AFFIRMED.

EASTERBROOK, Circuit Judge, *concurring.*

U.S.S.G. 4B1.2(1) treats as a crime of violence "any offense under federal or state law punishable by imprisonment for a term exceeding one year that" satisfies the criteria of subsection (i) or (ii). We therefore need to

15. The fact that Application Note 2 specifically excludes possession of a firearm by a felon from the definition of crime of violence does not affect our conclusion. Possession of a firearm *does not* in itself create a risk of injury; an offender must make a subsequent volitional choice (only tangentially related to the offense of possession) to fire or recklessly brandish the weapon. A decision to drive drunk is reckless from the start; no *subsequent volitional act is necessary to create* the risk.

16. At oral argument, Rutherford raised one final argument that the "otherwise" clause does not apply to drunk driving. He contends that the legislative history of 18 U.S.C. § 924(e)(2)(B), from which the clause was adopted, reveals that Congress intended the "otherwise" clause to cover crimes against property, not crimes like drunk driving. *Taylor v. United States*, 495 U.S. 575, 587, 110 S.Ct. 2143, 2152, 109 L.Ed.2d 607 (1990). This may or may not be the case, and even if Congress intended the "otherwise" clause to apply only to property crimes when it adopted § 924(e), the Commission's motives in drafting § 4B1.2 may have been different, and one may not overlook the plain language of the "otherwise" clause based on speculation about the Commission's intent.

17. Our holding today will not transform all drunk driving convictions into crimes of violence under § 4B1.2, because most drunk driving offenses are not punishable by more than one year of imprisonment. In Alabama, for example, driving under the influence does not become a felony until the fourth conviction in a five-year period. Ala.Code § 32–5A–191(f). Thus only ha-

bitual drunk drivers or offenders who seriously injure others in drunk driving accidents (like Rutherford) will qualify as violent offenders.

18. Aliens who have committed an offense of "reckless driving or ... driving while intoxicated ... if such crime involves personal injury to another" have committed a "serious criminal offense" and may be denied visas or excluded from the United States. *See* 8 U.S.C. § 1101(h); 8 U.S.C. § 1182(a)(2)(E)(i). Diplomats who injure another person while driving under the influence may be required to leave the United States if they decline to waive diplomatic immunity. David A. Jones, Jr., *Diplomatic Immunity: Recent Developments in Law and Practice*, 85 Am.Soc.Intl.L.Proc. 251, 264 (April 19, 1991); *cf. In the Matter of Collester*, 126 N.J. 468, 599 A.2d 1275 (1992) (alcoholic judge who was a repeat drunk driving offender ordered suspended without pay for two months).

19. The *Parson* court noted that "crimes such as drunk driving ... present a serious risk of physical harm to a victim and therefore qualify as predicate 'crimes of violence' for purposes of the career offender Guideline. We are concerned by the possibility that a defendant could be deemed a career violent offender on the basis of two such convictions, even when he or she never intended harm, nor was there a substantial risk that he or she would have to use intentional force.... The term 'career offender' implies an ongoing intent to make a living through crime, and it is doubtful that one can make a career out of recklessness." *Parson*, 955 F.2d at 874.

inquire whether the "offense" satisfies the criteria. *Taylor v. United States,* 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), which dealt with parallel language in the Armed Career Criminal Act, 18 U.S.C. § 924(e), concluded that a court should not look beyond the statutory elements—and, if these are open-ended, the charging papers. 495 U.S. at 600–02, 110 S.Ct. at 2159–60. This principle carries over to the Guidelines, which have an identical structure. Yet instead of asking whether the crime of which Rutherford was convicted—"assualt in the first degree" under Alabama law—is a "crime of violence," my colleagues pose an irrelevant question: whether drunk driving is a crime of violence. The answer to the proper question is "yes," so I join the court's judgment but not its opinion.

Alabama Code § 13A–6–20(a)(5) provides that a person commits the crime of assault in the first degree if,

> while driving under the influence of alcohol or a controlled substance or any combination thereof in violation of Section 32–5A–191 he causes serious bodily injury to the person of another with a motor vehicle.

This offense is distinct from drunk driving. Drunk driving is a lesser included offense of the crime that § 13A–6–20(a)(5) creates. We need to establish whether first-degree assault is a crime of violence, not whether its lesser included offense is such a crime.

Section 4B1.2(1) says that an "offense" qualifies as a crime of violence if it

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (ii) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

These subsections establish that an offense is a "crime of violence" if injury occurs, is threatened, is attempted, or is likely. The first of these involves completed harm; the latter three involve probabilities of harm. Burglary, arson, extortion, and explosives are listed separately for the reasons detailed in *Taylor:* each is a type of crime that entails risk, and the Commission has dispensed with the need for judicial classification. (Burglars may surprise the residents, and so on.) When the Sentencing Commission has not classified an offense as high-risk, the court must determine whether it is as risky as the listed offenses.

First-degree assault as Alabama defines it fits within the first category (force against a person) rather than the fourth (risk of harm). Physical force is not incidental, or aimed at, or a hazard; it is an *element* of the offense. One car slams into another (or into a pedestrian) with a great deal of force. My colleagues dismiss this understanding by asserting that only a person who intends to inflict injury "uses" force. But the text does not mention intent. Instead it specifies that an offense is a crime of violence if *an* element involves the use of force against a person. Most criminal statutes separate the forbidden acts (the *actus reus* ) from the mental state (the *mens rea* ). Who did what to whom is the *actus reus;* with what mental state is the *mens rea.* By saying that an offense qualifies if "an element" involves the use of force, the Guideline establishes that the *actus reus* may suffice, even if the statute also requires proof of a mental state. Consider, for example, a statute that forbids striking a person with intent to injure him. The separation of the *actus reus* (the striking) from the *mens rea* (the intent to injure) implies that "striking" does not itself entail a mental state. (You can strike a person by accident.) Yet this law surely has, as an element, the use of force against the person of another.

Citation of a dictionary or two does not abolish the centuries-old distinction between *mens rea* and *actus reus.*[†] Words do not

---

[†] The latest *Oxford English Dictionary,* on which the majority relies, includes dozens of definitions of "use" that do not suggest any mental ingredient. The definition in my colleagues' opinion is the first clause of one definition in a list of 54 (22 for the noun, 25 for the verb, and 7 for the adjective "used") spread over six pages; most of the main definitions have two to four sub-definitions. The second clause of the same sub-definition that the majority quotes omits any hint of purpose or intent. See also A. Raymond Randolph, *Dictionaries, Plain Meaning, and Context*

have meaning in the abstract; they take color from context. That is the point of both the majority's opinion in *Smith v. United States*, —— U.S. ——, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993), which holds that one may "use" a gun in the course of a drug crime by bartering the gun for drugs, and Justice Scalia's dissent, *id.* at ——, 113 S.Ct. at 2060–63, which concludes that the word "use" in 18 U.S.C. § 924(c)(1) refers to the primary uses of guns (shooting bullets or intimidating victims). None of the Justices suggested that "use" in § 924(c)(1) has an intent component; that came (if at all) in the requirement that the gun be used "in relation to" the drug deal, and even that condition is satisfied, the Court said, if the gun has "some purpose *or effect* with respect to the drug trafficking crime". —— U.S. at ——, 113 S.Ct. at 2059 (emphasis added). The dominant view among federal courts, stated most clearly in *United States v. Bailey*, 36 F.3d 106, 108 (D.C.Cir.1994) (en banc), *cert. granted*, —— U.S. ——, 115 S.Ct. 1689, 131 L.Ed.2d 554 (1995), is that a gun close to drugs, and accessible to the defendant, has been "used" in a drug transaction. That understanding, which employs objective criteria and omits any investigation of mental state, is one this court shares. *United States v. Perez*, 28 F.3d 673, 676 (7th Cir.1994); *United States v. Gunning*, 984 F.2d 1476, 1481–83 (7th Cir. 1993); *United States v. Vasquez*, 909 F.2d 235, 240 (7th Cir.1990). It is hard to square with the majority's belief that the word "use" necessarily implies a mental-state component, no matter the statutory context. Even the dissenting judges in *Bailey*, who concluded that a gun is "used" only if displayed, brandished, or discharged, did not equate "use" with intent to harm; a gun may be discharged accidentally, and thus "used," in the same sense that a drunk driver may mow down a pedestrian without intending injury. (A gun-wielding drug dealer intends to hold the gun, and the drunk driver intended to drink and drive; the intent to do the risk-creating act may well be "transferred" to the completed harm just as in felony-murder cases, but this need not detain us.)

Guideline 4B1.2(1) elevates punishment when harm is completed, threatened, attempted, or likely. Would it not be strange to treat intent as essential under subsection (i), only to omit it from subsection (ii)? Then offenses that entail actual force and severe injury would not qualify under subsection (i), but would come in the back door of subsection (ii)—for crimes that necessarily entail physical injury (because that is an element of the offense) also entail the risk of physical injury! Let us take Occam's razor and slice off the unnecessary construct. My colleagues reply (at 375–376) that subsection (ii) disregards the elements of the offense, and therefore does not identify as "risky" all activities in which harm materializes. I agree with this in the sense that freak harms do not show significant risk. People occasionally lose their arms in elevators, but using an elevator is not hazardous. But *every* conviction of first-degree assault in Alabama entails "serious bodily injury," and a category of acts 100% of which end in "serious bodily injury" necessarily "presents a serious potential risk of physical injury to another." As the majority writes, "subsection (ii) focuses on the *conduct* involved in the offense" (*ibid.;* emphasis on original). The "offense" is first-degree assault, and the conduct "involved in the offense" is maiming someone else with a car. That activity satisfies § 4B1.2(1) every time.