UNITED STATES of America,
Plaintiff–Appellee,

v.

Andre Eric WILLIAMS, Defendant–
Appellant.

No. 95–5005.

United States Court of Appeals,
Fourth Circuit.

Argued Sept. 29, 1995.

Decided Oct. 25, 1995.

ARGUED: Allan Bethea Burnside, Assistant Federal Public Defender, Columbia, South Carolina, for Appellant. John Michael Barton, Office of the United States Attorney, Columbia, South Carolina, for Appellee. ON BRIEF: J. Preston Strom, Jr., United States Attorney, Jane B. Taylor, Assistant United States Attorney, Columbia, South Carolina, for Appellee.

Before WILKINSON, WILLIAMS, and DIANA GRIBBON MOTZ, Circuit Judges.

Affirmed by published opinion. Judge DIANA GRIBBON MOTZ wrote the opinion, in which Judge WILKINSON and Judge WILLIAMS joined.

## OPINION

DIANA GRIBBON MOTZ, Circuit Judge:

Andre Williams pled guilty to possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g) (1994). Based on his prior convictions for burglary, assault and battery, and involuntary manslaughter, he was sentenced pursuant to 18 U.S.C. § 924 (1994) to a mandatory minimum sentence of fifteen years. Williams' sole claim on appeal is that the district court erred when sentencing him in finding that his prior involuntary

manslaughter conviction was a proper predicate offense under § 924. In support of this claim, counsel for Williams has fashioned a cogent, imaginative argument for which he is to be commended. That argument, however, must fail in view of the plain statutory language and well reasoned recent precedent. Because these authorities make it clear that involuntary manslaughter is a violent felony and so a proper predicate offense, the sentence was proper. Accordingly, we affirm.

Section 924(e) provides for sentence enhancement for defendants convicted of violating § 922(g) who have three previous convictions for serious drug offenses or violent felonies. "Violent felony" is statutorily defined as:

> any crime punishable by imprisonment for a term exceeding one year ... that
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B). Williams concedes that second degree burglary and assault and battery of a high and aggravated nature are violent felonies, but argues that involuntary manslaughter is not.

█ Specifically, Williams relies on the fact that involuntary manslaughter is not a specific intent crime and asserts that under § 924(e)(2)(B) a "violent felony" must be a specific intent crime. This argument is grounded on Williams' reading of legislative history of § 924(e)(2)(B). He maintains that this history indicates that Congress intended to limit "violent felonies" to crimes involving the specific intent to use force a) against persons (subsection (i)) or b) against property if the conduct involved presents a severe risk of injury to a person (subsection (ii)). In fact, although the House Report generally describes this legislation as proscribing felonies involving use of force against a person and felonies involving physical force against property when the conduct presents a serious risk of injury to a person, it does not mandate that such felonies be crimes involving specific intent or state that manslaughter does not constitute a violent felony. *See* H.R.REP. No. 849, 99th Cong., 2d Sess. 3 (1986).

█ Moreover, whatever the legislative history, the most fundamental difficulty with Williams' argument is that nowhere in § 924(e)(2)(B) itself is there any requirement of specific intent. *See also United States v. Leeper*, 964 F.2d 751, 753 (8th Cir.1992) ("Neither of these provisions [ (the Sentencing Guidelines or § 924) ] limit 'crimes of violence' to intentional crimes"). Common sense suggests that involuntary manslaughter is indeed "conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). South Carolina's statutory definition of the state of mind required for involuntary manslaughter brings the crime squarely within this language. Under South Carolina law, a showing of criminal negligence is required for a conviction of involuntary manslaughter, and criminal negligence is "defined as the reckless disregard for the safety of others." S.C.Code Ann. § 16–3–60 (Law.Co-op.1985). *See also Casey v. State*, 305 S.C. 445, 409 S.E.2d 391, 392 (1991); *State v. Gandy*, 283 S.C. 571, 324 S.E.2d 65, 66–67 (1984). Conduct that involves "the reckless disregard for the safety of others" (and which results in someone's death) clearly presents a "serious potential risk of physical injury to another" under § 924(e)(2)(B)(ii).

Furthermore, in *United States v. Payton*, 28 F.3d 17, 19 (4th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 452, 130 L.Ed.2d 361 (1994), we considered, in another context, the very question presented here—whether involuntary manslaughter is a violent crime—and answered that question in the affirmative. *Payton* involved sentence enhancement under the Sentencing Guidelines rather than under § 924. Thus, as Williams asserts, it is not controlling here. However, it is recent persuasive authority interpreting very similar language. Indeed, the definition of "crime of violence" at issue in *Payton* is almost identical to the definition of "violent felony" under § 924(e)(2)(B). *Compare* § 924(e)(2)(B) *with* United States Sentencing Commission, *Guidelines Manual*, § 4B1.2

(Nov.1994). In *Payton*, we specifically rejected the argument that the "catch-all" language in the definition of "crime of violence" (which is identical to the catch-all language in § 924(e)) "applies only to crimes against property." 28 F.3d at 19.

Moreover, in *Payton* we relied on the reasoning applied in *United States v. Springfield*, 829 F.2d 860, 862–63 (9th Cir.1987). There, the Ninth Circuit determined that involuntary manslaughter is a "crime of violence" under 18 U.S.C. § 924(c). *Id.* Although *Springfield* involved a different subsection of § 924 than is at issue here, the definitional language is very similar. *Compare* § 924(c)(3) *with* § 924(e)(2)(b). Furthermore, our reliance in *Payton*, a "Guidelines case," on the *Springfield* court's interpretation of a statutory provision undercuts Williams' argument that different analyses should apply depending on whether a court is interpreting the Sentencing Guidelines or construing a statute.

Nevertheless, Williams maintains that the examples of burglary, arson, extortion, and the use of explosives in § 924(e)(2)(B)(ii) limit that part of the definition to crimes against *property.* As noted above, that argument is inconsistent with the plain language of the statute. It is also contrary to *United States v. Mobley*, 40 F.3d 688 (4th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 2005, 131 L.Ed.2d 1005 (1995). In *Mobley*, we concluded, "[w]hile it is possible to infer a property restriction into the structure of the statute, a plain reading of the words suggests that it covers any crime of various enumerated types, and also those crimes of whatever variety that involve conduct that presents a serious potential risk of physical injury to another." *Id.* at 696. *See also United States v. O'Neal*, 937 F.2d 1369, 1372 (9th Cir.1990)(holding that vehicular manslaughter "qualifies as a violent felony under section 924(e)(2)(B)(ii) in that it 'involves conduct that presents a serious potential risk of physical injury to another'").

Our conclusion in *Mobley* was based in part on the Supreme Court's analysis in *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). The Supreme Court stated that the catch-all language in

§ 924(e)(2)(B)(ii) "includes *any* crime that 'involves conduct that presents a serious potential risk of physical injury to another.'" *Id.* at 597, 110 S.Ct. at 2157. As we noted in *Mobley*, "the [*Taylor*] Court stated that it was not just property crimes that fall within the catch-all, but rather '*any* crime'; and it underlined the *any*, which suggests that it was not a mere slip of the tongue in throwaway *dicta.*" 40 F.3d at 695.

In sum, our holding here is compelled by the plain language of § 924(e)(2)(B), and is supported by our decisions in *Payton* and *Mobley* and that of the Supreme Court in *Taylor.* The sentence is

*AFFIRMED.*