UNITED STATES of America, Appellee,

v.

Jeffrey Scott MOORE, Appellant.

No. 94–1624.

United States Court of Appeals,
Eighth Circuit.

Submitted Aug. 8, 1994.

Decided Oct. 24, 1994.

Stanley E. Whiting, Winner, argued, for appellant.

Dennis R. Holmes, Pierre, SD, argued, for appellee.

Before McMILLIAN, Circuit Judge, HEANEY, Senior Circuit Judge, and LOKEN, Circuit Judge.

McMILLIAN, Circuit Judge.

Appellant, Jeffrey Scott Moore, appeals from a final judgment entered in the United

States District Court[1] for the District of South Dakota upon a jury verdict finding him guilty of involuntary manslaughter in violation of 18 U.S.C. § 1112 and use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c).[2] The district court sentenced Moore under the federal sentencing guidelines to 72 months imprisonment, two years supervised release, and a special assessment of $100.00. For reversal, Moore argues the district court erred in (1) failing to allow the jury to decide whether involuntary manslaughter was a crime of violence, (2) concluding that involuntary manslaughter was a crime of violence, and (3) admitting autopsy photographs of the victim. For the reasons discussed below, we affirm the judgment of the district court.

## I. BACKGROUND

Moore is a 22–year–old Native American. He is enrolled in the Rosebud Sioux Tribe in South Dakota. On September 3, 1993, he attended a party at the home of Valerie Arcoren in Rosebud. The party continued into the early morning hours of September 4, 1993, and then moved to the residence of Della Spotted Tail in the countryside. Moore and his friends also went to the Spotted Tail residence and arrived some time between 3:00 a.m. and 4:00 a.m. Moore was drinking beer throughout the evening, and several persons testified that he was intoxicated.

Moore owned a semi-automatic 9 mm pistol for which he had obtained a permit. He purchased the pistol in June 1993 after being threatened by a group of persons who beat him up in 1989. Moore decided to carry the pistol on the night of September 3, 1993. That night he loaded the pistol with five shells and concealed the weapon under his shirt. He testified that he did not chamber a round at that time or any other time that evening. On the way to the Spotted Tail residence, he took the pistol out of his pants, checked it, and then replaced it.

Sometime after arriving at the Spotted Tail residence, Moore removed the pistol from his belt. Witnesses estimated there were from 20 to as many as 100 people in an area outside the Spotted Tail home. The victim, Lee Ray Medearis, and his friend Jason Fuller were among the guests. Fuller testified that he observed Moore holding the pistol but not pointing it at anyone. Fuller took the pistol from Moore because he realized that Moore was intoxicated and might shoot someone. Fuller pulled the slide back several times, believing that he had ejected all of the rounds from the clip. Fuller then returned the pistol to Moore. Moore also believed that the pistol was unloaded. At some point, however, a shell was obviously chambered, because shortly after Fuller returned the gun to Moore, it discharged, fatally striking Medearis in the chest.

Moore admitted at trial that he had pointed the gun directly at Medearis, but at the same time, he maintained that he "held it up in the air and it went off." Dr. Donald Habbe, a forensic pathologist, testified as to the nature of the bullet wounds and the cause of death. Two photographs of the victim's body were introduced into evidence, over defense objections, to support Dr. Habbe's findings on the location of the bullet wounds.

## II. DISCUSSION

### A

Moore first contends that the district judge erred by instructing the jury that involuntary manslaughter was a "crime of violence" under 18 U.S.C. § 924(c).[3] Moore

1. The Honorable John B. Jones, Chief Judge, United States District Court for the District of South Dakota.

2. The recently enacted Violent Crime And Law Enforcement Act of 1994, Pub.L. No. 103–322, 1994 U.S.C.C.A.N. (108 Stat.) 1796, does not apply to the disposition of this matter.

3. Section 924(c)(1) provides in pertinent part: Whoever, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years. . . .

maintains that it is for the jury to decide whether the crime was one "of violence." Moore argues that this instruction effectively directed a verdict on the firearm charge.[4] Moore argues that the jury should have determined whether involuntary manslaughter was a crime of violence by applying the definitional language of 18 U.S.C. § 924(c)(3)(A) or (B).[5] It is his contention that whether involuntary manslaughter is a crime of violence is an element of the firearm charge to be proven by the government beyond a reasonable doubt.

■ The district judge in the present case did not improperly answer a question of fact which should have been decided by the jury. We hold the court correctly applied a categorical analysis to the elements of involuntary manslaughter as defined in 18 U.S.C. § 1112 and determined as a matter of law that it was a crime of violence.

■ Section 924(c)(3)(B) defines a crime as a crime of violence if *"by its nature* it involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." (Emphasis added.) To determine the nature of a crime requires an examination of the elements which compose it. This analysis does not require an exploration of the underlying facts. It does, however, call for a study of the statutory definition of the particular offense, and the task of statutory interpretation is one best placed in the hands of the trial judge. *See In re Graven*, 936 F.2d 378, 384 (8th Cir.1991) ("The interpretation of a statute is a question of law for the trial court, subject to de novo review on appeal."). This is the categorical approach.

The precise question of whether involuntary manslaughter is a crime of violence under § 924(c) was presented in *United States v. Springfield*, 829 F.2d 860 (9th Cir.1987). Although the district court did not apply the categorical approach, the appeals court did. At the trial level, the judge considered the question under a totality of the circumstances approach and concluded involuntary manslaughter in that particular case was a crime of violence. This conclusion was affirmed on appeal by the Ninth Circuit using a categorical approach:

> The district court did not conclude that involuntary manslaughter "by its nature" involved a substantial risk of physical force *as it should have* in order to convict under § 924. We find, however, that there was no error in the district court's conclusion. Involuntary manslaughter does, in the sense intended in the statute, carry with it the "risk" of physical force. We conclude that involuntary manslaughter, which "by its nature" involves the death of another person, is highly likely to be the result of violence. It thus comes within the intent, if not the precise wording, of section 924(c)(3).

*Id.* at 863 (emphasis added). Although Moore attempts to distinguish his case from *Springfield*, it is clear the Ninth Circuit believed the trial judge had the power to resolve the question without reference to the particular facts of the case. The fact that the court went on to hold that involuntary manslaughter as defined by § 1112 was a crime of violence under § 924(c)(3) unmistakably reveals that it understood the question to be one of law.[6]

> For purposes of this subsection, the term "crime of violence" means an offense that is a felony and—
>
> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

6. *See United States v. Mendez*, 992 F.2d 1488 (9th Cir.1992) (applying the categorical approach to § 924(c)(3) to determine whether conspiracy to rob is a crime of violence), *cert. denied*, —— U.S.

4. Instruction No. 17 read:

> The term "crime of violence" means an offense that is a felony and has as one of its essential elements the use, attempted use, or threatened use of physical force against the person or property of another, or an offense that by its very nature involves a substantial risk that such physical force may be used in committing the offense.
>
> The offense alleged in Count 1 of the indictment, involuntary manslaughter, is a crime of violence.

5. 18 U.S.C. § 924(c)(3) provides:

In support of his argument, Moore cites *United States v. Johnson,* 718 F.2d 1317 (5th Cir.1983), which held that a trial court erred in instructing the jury a particular investment instrument, namely a gold certificate, was a security. *Johnson,* however, is not dispositive here, because the precise question involved the characterization of a specific gold certificate, i.e., the physical document in evidence before the jury.

In the present case, the question is not whether the particular facts constitute a crime of violence, but whether the crime of involuntary manslaughter as defined by § 1112 is a crime of violence. This inquiry into the statutory definition does not call for factual review. The *Johnson* Court itself anticipated this distinction:

> The definition of security is a matter of law. It is the judge's duty to instruct the jury concerning that definition: the way in which a security is identified. Whether a particular piece of paper meets that definition, however, is for the jury to decide. Of course, the question whether a generic type of document, such as a traveler's check or an equipment lease, may come within the reach of the statute's prohibition is one of law.

*Id.* at 1321 n. 13. This distinction fits neatly into the analysis of the matter before us. A judge can tell the jury that a traveler's check is (or is not) a security, but the jury must decide whether the document before them is indeed a traveler's check. In the present case, the judge properly instructed the jury that the crime of involuntary manslaughter as defined by § 1112 was a crime of violence, but the jury still had to determine if the facts presented to them constituted the offense of involuntary manslaughter.

This analysis is also consistent with the result we reached in *United States v. White Horse,* 807 F.2d 1426 (8th Cir.1986). In that case, we held the trial judge had erred in instructing the jury that a Telephone Authority was an "Indian tribal organization" as a matter of law because the judge could have only reached this conclusion by "weighing the merits of evidence introduced through testimony." *Id.* at 1431. In *White Horse,* we distinguished *United States v. Morris,* 451 F.2d 969 (8th Cir.1971), which held the issue of whether a party was in "federal custody" was a question of law. *Id.* at 972. As we explained in *White Horse,* the issue in *Morris* was "a legal question of status that could only have been created by legal process, and the court's conclusion was bottomed on facts whose probative value could not properly have been altered by a jury." 807 F.2d at 1432. In the present appeal, the "nature" of the offense of involuntary manslaughter is not subject to the varying facts of each case. Thus, there is no weighing of the facts to be done as was done improperly by the trial judge in *White Horse.*

### B

We now reach the question whether the trial judge was correct in concluding that involuntary manslaughter as defined by § 1112 is a crime of violence under § 924(c)(3)(B). As indicated above, our review is de novo. Although we have not yet been faced with this particular question, we are aided by the analysis of *United States v. Rodriguez,* 979 F.2d 138 (8th Cir.1992). In that case, we addressed the issue of how to determine what constitutes a crime of violence in the context of the Sentencing Guidelines.

*Rodriguez* involved the question of whether a sentence should be enhanced under the Guidelines because the defendant had previously committed an aggravated felony. "Aggravated felony" for purposes of the Guidelines meant any crime of violence as defined by 18 U.S.C. § 16. *See* U.S.S.G. § 2L1.2(b)(2), Application Note 7. The language of § 16 is nearly identical to that of § 924(c)(3). In this context, we concluded: "All crimes which by their nature involve a

——, 114 S.Ct. 262, 126 L.Ed.2d 214 (1993); *see also Taylor v. United States,* 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) (applying the categorical approach to determine what is a "violent felony" for purposes of 18 U.S.C. § 924(e)(2)(B)(ii)). The categorical approach is supported by the Committee Comments to Instruction 6.18.924 of the Model Jury Instructions for District Courts of the Eighth Circuit: "The Committee believes the question of whether the crime is a crime of violence ... is a question of law for the court."

substantial risk of physical force share the *risk* of harm. It matters not one whit whether the risk ultimately causes actual harm. Our scrutiny ends upon a finding that the risk of violence is present." *Rodriguez,* 979 F.2d at 141; *accord United States v. Reyes–Castro,* 13 F.2d 377, 379 (10th Cir. 1993); *see United States v. Bauer,* 990 F.2d 373 (8th Cir.1993) (per curiam) (holding that statutory rape is a crime of violence for sentence enhancement purposes).

Applying the categorical approach, we agree with the conclusion of the Ninth Circuit that involuntary manslaughter as defined by § 1112 is a crime of violence under 18 U.S.C. § 924(c)(3)(B). *See Springfield,* 829 F.2d at 863; *accord United States v. Payton,* 28 F.3d 17, 19 (4th Cir.1994), *petition for cert. filed,* (Sept. 20, 1994) (No. 94–6147). Involuntary manslaughter is defined in § 1112 as "the unlawful killing of a human being without malice ... [i]n the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution or circumspection, of a lawful act which might produce death." It is a crime which, by definition, always results in the unlawful death of another human being. As such, it is a crime in which there inheres the substantial risk that physical force will be used in its commission. No review of any underlying facts is needed to meet the "substantial risk" test set out in the statute. A reading of the statutory elements of the predicate offense is all that is required. Under *Rodriguez,* our inquiry need go no further.

## C

Moore lastly argues that the district court abused its discretion in admitting two autopsy photographs of the victim. Moore contends that the admission of the photographs served only to arouse the emotions of the jury and should have been excluded as unfairly prejudicial under Rule 403 of the Federal Rules of Evidence.

The photographs were introduced in conjunction with the testimony of the forensic pathologist who performed the autopsy on the victim. The pathologist testified about the cause of death and the position of the entry and exit wounds. Moore did not deny that he had pointed the gun toward the victim, but he also testified that he "held it up in the air and it just went off." Thus, there was at least some controversy regarding the position of the pistol at the moment of discharge.

A district court has broad discretion in ruling on admissibility of evidence. *United States v. Waloke,* 962 F.2d 824, 829 (8th Cir.1992). While it appears that the introduction of this evidence added little, if anything, to the government's case, the trajectory of the bullet was relevant to whether Moore acted negligently because it is circumstantial evidence of the pistol's firing position. We cannot say that it was an abuse of discretion to admit the autopsy photographs.

## III. CONCLUSION

For the reasons set out above, the judgment of the district court is affirmed.