# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2309

_____

| | | |
|---|---|---|
| Mahad Mohamed Omar, INS Detainee | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | |
| | * | |
| Immigration and Naturalization | * | Petition for Review |
| Service; | * | from an Order of the |
| | * | Board of Immigration Appeals. |
| Curtis Aljets, District Director, | * | |
| Bloomington, MN, INS; | * | |
| | * | |
| John Ashcroft, U.S. Attorney General, | * | |
| | * | |
| Respondents. | * | |

_____

Submitted:  December 13, 2001
Filed:  August 5, 2002

_____

Before HANSEN,[1] Chief Judge, HEANEY, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

_____

[1]The Honorable David R. Hansen became Chief Judge of the United States Court of Appeals for the Eighth Circuit on February 1, 2002.

Mahad Mohammed Omar petitions for review of an order of the Board of Immigration Appeals. The Board ordered him deported under the Immigration & Naturalization Act (INA) for being an alien convicted of an aggravated felony, and Omar contends that his Minnesota convictions for criminal vehicular homicide are not aggravated felonies. Respondents Immigration & Naturalization Service (INS), District Director Curtis Aljets, and United States Attorney General John Ashcroft oppose that contention and assert that the court lacks jurisdiction over the merits of the petition. Because we conclude that criminal vehicular homicide is an aggravated felony under federal law, we dismiss Omar's petition.

I.

Omar left Somalia in 1990 because of a civil war. After five years in a refugee camp in East Africa, he entered the United States and obtained permanent resident status. He and his Somali wife moved to Minnesota, and they have a child born in the United States.

The events underlying Omar's convictions took place in April 1996. Omar was drinking with friends after work when one of them received a call from some Somalis at the airport who asked to be picked up in his sport utility vehicle. The friend felt he was unable to drive because of the alcohol he had consumed, and Omar went instead. At the airport he picked up nine or ten passengers and subsequently drove off the road onto the shoulder of a highway entrance ramp. The vehicle rolled over at least three times, and everyone was thrown from it. Two passengers were killed, and another was badly injured. Omar's blood alcohol content was measured soon after the accident at 0.11.

In May 1999 Omar pled guilty in state district court to two counts of criminal vehicular homicide under Minn. Stat. § 609.21, subd. 1(4). He was sentenced to 48

months for each offense, to run consecutively. The sentence was stayed on condition he serve two years in a county workhouse and pay restitution.

The INS initiated removal proceedings[2] against Omar for having been convicted of aggravated felonies. 8 U.S.C. § 1227(a)(2)(A)(iii). An immigration judge found him removable as charged and ordered him deported. He appealed, and the Board affirmed. It held that criminal vehicular homicide is an aggravated felony within the meaning of the INA, 8 U.S.C. § 1101(a)(43)(F), because by its nature it involves a substantial risk that physical force may be used against the person or property of another and is therefore a crime of violence under 18 U.S.C. § 16(b).[3]

Omar petitioned this court for review and moved for a stay of deportation. His motion for stay was denied, and he was deported and applied for asylum in Sweden. After that application was denied, he returned to INS custody and is now at a detention center in Texas. The INS has agreed not to remove him again before his petition for review is decided.

Omar argues that he is not removable because criminal vehicular homicide is not a crime of violence. In support of his position he cites cases which have concluded that certain alcohol related driving offenses do not come within the § 16(b) definition of crime of violence. See Dalton v. Ashcroft, 257 F.3d 200 (2d Cir. 2001); Bazan-Reyes v. INS, 256 F.3d 600 (7th Cir. 2001); United States v. Chapa-Garza, 243 F.3d 921 (5th Cir. 2001). He argues that an offense can qualify as a crime of

---

[2]The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) eliminated the previous legal distinction between deportation and removal proceedings. See United States v. Pantin, 155 F.3d 91, 92 (2d Cir. 1998) (per curiam) (citing IIRIRA §§ 304, 306 (codified at 8 U.S.C. §§ 1229-1229c, 1252)). We do not distinguish the terms in this opinion.

[3]The Board also affirmed denial of relief under the Convention Against Torture, and Omar does not challenge that ruling.

violence under § 16(b) only if it involves a substantial risk of intentional use of force against a person, Chapa-Garza, 243 F.3d at 924-27, and that the Minnesota statute under which he was convicted is a strict liability type of offense which does not require intent. Omar claims that the words "risk that physical force…may be used" show that Congress meant in § 16(b) to cover only crimes in which there is an intent to use physical force against a person or property. See Bazan-Reyes, 256 F.3d at 611. He also cites a recent decision of the Board, In re Ramos, 23 I. & N. Dec. 336 (BIA 2002), and he seeks to show legislative history favorable to his interpretation, including a change made by the United States Sentencing Commission in the guidelines definition of crime of violence. Compare USSG §4B1.2(1) (June 1988) with USSG §4B1.2(1) (Nov. 1990). He argues in addition that the language of 16(b) is ambiguous and that ambiguities in deportation statutes are to be construed in favor of an alien. INS v. St. Cyr, 533 U.S. 289, 320 (2001).

Respondents argue that § 16(b) does not require the intentional use of force, citing United States v. Moore, 38 F.3d 977 (8th Cir. 1994), and other appellate decisions. See United States v. Trinidad-Aquino, 259 F.3d 1140 (9th Cir. 2001); Park v. INS, 252 F.3d 1018 (9th Cir. 2001); United States v. Springfield, 829 F.2d 860 (9th Cir. 1987); Matter of Alcantar, 20 I. & N. Dec. 801 (BIA 1994). They point out that we concluded in Moore that involuntary manslaughter, a crime which does not require intent, is a crime of violence under a statutory definition essentially the same as that in § 16(b). They suggest that the cases cited by Omar have ignored the distinction within § 16 between the definition in subsection (a), in which the use of force is an *element* of the offense (as is the threat or attempt to use it), and subsection (b), in which the focus is on whether the offense *by its nature* involves a substantial risk that physical force may be used against another.[4] Respondents argue that the

---

[4]Respondents argue in a footnote to their brief that criminal vehicular homicide would also fit the definition of crime of violence in § 16(a), but because of our disposition we need not address that point. We note, however, that the Sixth Circuit has held in an unpublished opinion that drunk driving homicide is a crime of violence

required state of mind under § 16(b) is at most recklessness. See, e.g., Trinidad-Aquino, 259 F.3d at 1146 (a crime of violence under § 16(b) "need not be committed purposefully or knowingly, but it must be committed at least recklessly."); Park, 252 F.3d at 1025 & n.9 (§ 16(b) requires a "sufficiently culpable mens rea," but "an *intentional* use of physical force is not required.") (emphasis in original). They also point out that the Minnesota criminal vehicular homicide statute requires no more than a mental state of recklessness and that the Minnesota Supreme Court long ago concluded that those who drive while intoxicated meet that standard. See State v. Bolsinger, 21 N.W.2d 480, 493 (Minn. 1946).

## II.

Judicial review of removal orders under the INA has been significantly restricted by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009. IIRIRA provides that courts have no jurisdiction to review a final order of removal under the aggravated felony provision, 8 U.S.C. § 1252(a)(2)(C),[5] but the circuit courts which have considered the issue all agree that there is jurisdiction to decide whether the offense of conviction is an aggravated felony. See Francis v. Reno, 269 F.3d 162, 165 (3d Cir. 2001). See also Dalton, 257 F.3d at 203 (2d Cir.); Bazan-Reyes, 256 F.3d at 604 (7th Cir.); Tapia Garcia v. INS, 237 F.3d 1216, 1220 (10th Cir. 2001); Wireko v. Reno, 211 F.3d 833, 835 (4th Cir. 2000). Although the Supreme Court has not yet decided the issue, the government conceded in a case before it that appellate courts have jurisdiction

under both § 16(a) and § 16(b). United States v. Santana-Garcia, 211 F.3d 1271, 2000 WL 491510, at *2-3 (6th Cir. Apr. 18, 2000).

[5]"Notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section…1227(a)(2)(A)(iii)." 8 U.S.C. § 1252(a)(2)(C).

over petitions which challenge whether a particular felony meets the statutory definition. United States v. Calcano-Martinez, 533 U.S. 348, 350 n.2 (2001). The respondents make the same concession in this case, and we conclude that we have jurisdiction to decide whether criminal vehicular homicide is an aggravated felony for purposes of the INA.

The INA provides various grounds for deportation of an alien, one of which is commission of an aggravated felony. 8 U.S.C. § 1227(a)(2)(A)(iii). For a felony to be an aggravated felony under the INA, it must be an offense punishable by a least one year and a crime of violence as defined in the criminal code at 18 U.S.C. § 16. See 8 U.S.C. § 1101(a)(43)(F). Section 16 defines a crime of violence in two ways as:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

In order to judge whether an offense fits the § 16(b) definition the statute itself directs a focus on the risk inherent in the nature of the particular offense, rather than a focus on the element of use of physical force as in § 16(a) (or attempted or threatened use). Courts are in general agreement that under § 16(b) a categorical or generic analysis of the nature of the felony must be conducted, rather than an examination of the facts of the individual case. United States v. Rodriguez, 979 F.2d 138, 140-41 (8th Cir. 1992); Chapa-Garza, 243 F.3d at 924; United States v. Reyes-Castro, 13 F.3d 377, 379 (10th Cir. 1993). See also Bazan-Reyes, 256 F.3d at 606 (applying categorical approach but looking at offender conduct where offense could not otherwise be classified). Cf. Moore, 38 F.3d at 979 (holding that categorical

analysis of an almost identical statute "does not require an exploration of the underlying facts…[but] study of the statutory definition of the particular offense….").

Respondents suggest that we should accord deference to the Board's interpretation of 18 U.S.C. § 16(b). The interpretation by a government agency of a statute it administers is entitled to deference unless its construction is unreasonable, Chevron USA v. Natural Res. Def. Council Inc., 467 U.S. 837, 842-44 (1984), and the Board is entitled to deference regarding its interpretation of the INA. INS v. Aguirre-Aguirre, 526 U.S. 415, 424 (1999). The question here, however, is whether deference is owed to the INA's interpretation of criminal statutes which it does not administer. The majority of appellate courts to consider the question has concluded that a de novo standard is appropriate for review of an interpretation by the INS of criminal statutes. See, e.g., Francis, 269 F.3d at 168 (3d Cir.); Dalton, 257 F.3d at 203-04 (2d Cir.); Park, 252 F.3d at 1021 (9th Cir.); Lopez-Elias v. Reno, 209 F.3d 788, 791 (5th Cir. 2000). Cf. Bazan-Reyes, 256 F.3d at 605 (7th Cir.). Courts holding otherwise have concentrated on the deference to which the Board is entitled with respect to the interpretation of federal immigration statutes. See Tapia Garcia, 237 F.3d at 1220-21 (10th Cir.); Le v. U.S. Attorney General, 196 F.3d 1352, 1353-54 (11th Cir. 1999).

We believe that the reasoning of the courts which favor a de novo standard is more persuasive. Section § 16(b) and Minn. Stat. § 609.21, subd. 1(4) are criminal statutes, and interpreting them does not involve special Board "expertise [or] application of administrative experience to a technical subject." Shah v. Reno, 184 F.3d 719, 724 (8th Cir. 1999). Federal courts, on the other hand, are regularly called upon to interpret criminal statutes, and in this case the issues of statutory construction relate to the jurisdiction of the court. See Lopez-Elias, 209 F.3d at 791 ("[T]he determination of our jurisdiction is exclusively for the court to decide.") While we view the Board's interpretation with respect, we conclude that a de novo standard of

review should apply to the question of whether criminal vehicular homicide is a crime of violence under § 16(b).  Cf. Dalton, 257 F.3d at 203-04.

The Minnesota offense of criminal vehicular homicide is committed if an individual

> causes the death of a human being not constituting murder or manslaughter as a result of operating a motor vehicle: (1) in a grossly negligent manner; (2) in a negligent manner while under the influence of…alcohol…; (3) while having an alcohol concentration of 0.10 or more; [or] (4) while having an alcohol concentration of 0.10 or more, as measured within two hours of the time of driving.

Minn. Stat. § 609.21, subd. 1.  Omar was convicted under subdivision 1(4) of causing the death of two persons while operating a vehicle with an alcohol concentration of 0.11.

Criminal vehicular homicide is punishable by a prison term of up to ten years, Minn. Stat. § 609.21, subd. 1, and the offense is a felony under Minnesota law.  See Minn. Stat. § 609.02, subd. 2.  It thus qualifies under the INA as an aggravated felony if it meets the definition in 18 U.S.C. § 16.  See 8 U.S.C. § 1101(a)(43)(F).  The critical question here is whether criminal vehicular homicide "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  18 U.S.C. § 16(b).

## III.

Omar attempts to read an intent requirement into § 16(b), but the language of the statute does not state that intent is an element or that use of physical force must be intentional or even that force will be involved in the commission of the offense.  The key question is whether the nature of the offense presents a *substantial risk* that

physical force may be applied. Section 16(b) calls for a generic examination of whether an offense carries a substantial risk that its commission *may* involve the application of physical force against a person or property, rather than a substantial risk that force *will* be used, and it does not direct courts to examine the particular facts surrounding a defendant's conduct. See, e.g., United States v. Aragon, 983 F.2d 1306, 1312 (4th Cir. 1993) ("Giving the term 'by its nature' its natural and plain meaning, § 16(b) directs the court to look to the generic nature of an offense in deciding whether the offense is a 'crime of violence.'"); Moore, 38 F.3d at 980 ("[T]he 'nature' of the offense of involuntary manslaughter is not subject to the varying facts of each case."). Nothing in § 16(b) indicates that a determination of the subjective intent of an offender or of a class of offenders is necessary for an offense to qualify as a crime of violence. An offense may qualify under the § 16(b) definition if harm results without any intent by the offender to employ force against another or to bring about the damaging consequences which may result. The unintentional application of physical force against a person can cause injury or death, and indeed has always resulted in death in the case of criminal vehicular homicide. We find no ambiguity in § 16(b), and Omar is therefore not entitled to have it construed in his favor. St. Cyr, 533 U.S. at 320.

The issue before the court is very close to the one decided in United States v. Moore, 38 F.3d 977 (8th Cir. 1994). In that case we considered essentially identical statutory language and concluded that involuntary manslaughter is a crime of violence even though it is not an intentional crime. Moore had been convicted of two federal offenses: involuntary manslaughter, in violation of 18 U.S.C. § 1112, and use of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c). Crime of violence for purposes of § 924(c) is defined in § 924(c)(3) almost exactly as in § 16, for it is a felony

> (A) [that] has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

-9-

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Moore argued that his § 924(c) conviction for using a firearm during a crime of violence had to be overturned and that the district court erred when it concluded that involuntary manslaughter was a crime of violence under the definition in § 924(c)(3)(B). Moore, 38 F.3d at 979. We applied a categorical approach to consider the nature of involuntary manslaughter and concluded that it is a crime of violence under the second definition in § 924(c)(3) because it is a crime "which, by definition, always results in the unlawful death of another human being. As such, it is a crime in which there inheres the substantial risk that physical force will be used in its commission." Id. at 981.[6]

No circuit applying a categorical approach to the question of whether involuntary manslaughter is a crime of violence has reached a conclusion contrary to our holding in Moore.[7] The Ninth Circuit has concluded that involuntary manslaughter is a crime of violence under § 924(c)(3). See Springfield, 829 F.2d 863 (9th Cir.). See also Park, 252 F.3d at 1023-25 (affirming holding of Springfield);

---

[6]Omar argues that Moore is flawed because it relied upon United States v. Rodriguez, 979 F.2d 138 (8th Cir. 1992), which he claims involved a different definition of crime of violence. This argument has no merit because Rodriguez applied the definition which cross referenced § 16, rather than the new definition adopted by the Commission in 1989. See USSG §2L1.2(b)(2), comment. (n.7) (Nov. 1992); Rodriguez, 979 F.2d at 139.

[7]Francis v. Reno, 269 F.3d 162, 171 (3d Cir. 2001), involved a misdemeanor criminal vehicular homicide statute in Pennsylvania which was held not to be a crime of violence under § 16(b) and which differed considerably from the felony statutes considered in the other cases. The statute was subsequently amended to make the offense a felony requiring recklessness or gross negligence instead of negligence. Id. at 165 n.1.

-10-

United States v. O'Neal, 937 F.2d 1369, 1372 (9th Cir. 1990) (following Springfield in determining that vehicular manslaughter is a crime of violence under § 924(e)(2)(B)(ii)), abrogated on other grounds, United States v. Sahakian, 965 F.2d 740, 741-42 (9th Cir. 1992). Other circuits have cited with approval Springfield's holding that involuntary manslaughter is a crime of violence under § 924(c)(3). See United States v. Sanders, 97 F.3d 856, 860-61 (6th Cir. 1996); United States v. Payton, 28 F.3d 17, 19 (4th Cir.), cert. denied, 513 U.S. 976 (1994); United States v. Lujan, 9 F.3d 890, 892 (10th Cir. 1993). The Board also has ruled that involuntary manslaughter is a crime of violence under § 16(b). See Matter of Alcantar at 813-14 (concluding in addition that the test for crime of violence under § 16 is the same as under § 924(c)(3), see id. at 805, 809). See also United States v. Clark, 773 F. Supp. 1533, 1535 (M.D. Ga. 1991) (applying analysis of § 16 to § 924(c)(3)).

A categorical examination of Minnesota's criminal vehicular homicide statute leads to the conclusion that the involuntary killing of another while operating a motor vehicle with an alcohol concentration of 0.10 or more is a crime of violence. A vehicle can exert considerable physical force because of its structure, weight, and capacity for motion and velocity, and the statute requires that its driver have been legally intoxicated when the offense was committed. An impaired driver in control of such a physical force presents a substantial risk that physical force may be used against a person. Minn. Stat. § 609.21, subd. 1(4).[8] Criminal vehicular homicide differs from many other types of driving under the influence offenses in that it always involves the killing of a person. Like involuntary manslaughter, criminal vehicular homicide by its nature inherently involves a substantial risk that physical force may be used against a person in its commission. See Moore, 38 F.3d at 981.

_____

[8]Omar argues that § 609.21, subd. 1(4) could be applied to a sober driver who only consumed alcohol after an accident, but the statute applies to driving "*while having* an alcohol concentration of 0.10 or more." Minn. Stat. § 609.21, subd. 1(4) (emphasis added). He provides no evidence that the statute has ever been applied as he hypothesizes, to him or to anyone else.

Under Minnesota law the felony of criminal vehicular homicide can be committed by causing a death because of gross negligence in operating a vehicle, operating a vehicle negligently and under the influence of alcohol, or operating a vehicle while having a prohibited level of blood alcohol. Minn. Stat. § 609.21, subd. 1. The way in which the statute is constructed suggests that the alternative grounds in the subdivision are equivalent to gross negligence since they require either negligence and driving under the influence of alcohol or driving with an established illegal blood alcohol concentration.

This legislative treatment is consistent with the manner in which the Minnesota Supreme Court has discussed individuals who drive while intoxicated:

> [O]ne who, sufficiently under the influence of liquor to impair his capacity as a driver, or who has just consumed intoxicants sufficient to speedily reduce him to incapacity, yet sufficiently sober to know he is undertaking a sober man's job, puts himself at the wheel of an automobile and takes the road, is *guilty of a willful and wanton disregard of the rights of all persons who ride with him* or use the highway he travels.

Bolsinger, 21 N.W.2d at 493 (quoting Foster v. Redding, 45 P.2d 940, 942 (Colo. 1935)) (emphasis added).[9] The Supreme Court used language similar to the definition of recklessness in the Model Penal Code § 2.02(2)(c) (2001) ("A person acts recklessly with respect to a material element of an offense when he *consciously disregards* a substantial and unjustifiable risk….") (emphasis added). Such language is also consistent with involuntary manslaughter cases predating Moore which held that the offense did not require intentional action, but rather "*a wanton or reckless*

---

[9]Apparently those who drive while intoxicated are likely to do so repeatedly; nationally one third of those arrested for such offenses are repeat offenders. Nat'l Highway Traffic Safety Admin., Traffic Tech. No. 85, "Repeat DWI Offenders in the United States" (Feb. 1995).

*disregard for human life*, knowing that [the actor's] conduct was a threat to the lives of others or having knowledge of such circumstances as could reasonably have enabled him to foresee the peril to which his act might subject others." United States v. McMillan, 820 F.3d 251, 255 (8th Cir. 1987) (quoting United States v. Schmidt, 626 F.2d 616, 617 (8th Cir.), cert. denied, 449 U.S. 904 (1980)) (emphasis added).

Omar relies on a number of cases which have held that driving under the influence offenses are not crimes of violence under § 16(b) because they do not involve a substantial risk that an offender will intentionally use force in committing the offense. Dalton, 257 F.3d at 207-08 (2d Cir.); Bazan-Reyes, 256 F.3d at 606-12 (7th Cir.); Chapa-Garza, 243 F.3d at 925-27 (5th Cir.). We do not find these precedents persuasive here because § 16(b) does not contain language of intent and because they are not on point. Both Dalton and Chapa-Garza involved driving under the influence offenses, not criminal vehicular homicide. Dalton illustrates the contrast well, for it involved a statute which did not require "risk of physical force" and under which someone asleep at the wheel of a car whose engine was not running could be found guilty of operating a vehicle while intoxicated. 257 F.3d at 205. In contrast, the Minnesota statute in this case only applies if a driver has killed another person while driving in a grossly negligent manner or in an unlawful degree of intoxication, and there are no circumstances where the offense of criminal vehicular homicide does not present a substantial risk that physical force will injure another. Although Bazan-Reyes, 256 F.3d at 602-04, included one homicide offense in the group of aggravated driving under the influence cases the court had before it, no separate discussion or categorical analysis of that offense was undertaken.

The respondents rely on other cases which have held that driving under the influence offenses are crimes of violence. See Tapia Garcia, 237 F.3d at 1222-23 (10th Cir.) (generic elements of offense satisfy § 16(b)); Le, 196 F.3d at 1354 (11th Cir.) (crime of violence under § 16(a)). Although Omar cites the Ninth Circuit decision in Trinidad-Aquino in his favor, that case specifically held that offenses

involving reckless states of mind qualify as crimes of violence and that "an *intentional* use of force is not required." 259 F.3d at 1146 (quoting Park, 252 F.3d at 1025 n.9) (emphasis in original). See also United States v. Ceron-Sanchez, 222 F.3d 1169, 1172-73 (9th Cir. 2000) (offense committed with reckless state of mind sufficient to qualify as a crime of violence under § 16(a) or § 16(b)). We consider the issue here to be much closer to Moore and other involuntary manslaughter cases than cases dealing with other types of driving offenses.

Omar also directs our attention to the recent Ramos decision by the Board. A closely divided Board decided there that driving under the influence is not a crime of violence under § 16(b), disapproving two earlier decisions it had relied on in Omar's case, Matter of Puente, Interim Decision 3412 (BIA 1999), and Matter of Magallanes, Interim Decision 3341 (BIA 1998). This again is a decision not dealing with an offense like criminal vehicular homicide, and in it the Board indicated that the mental state required for a crime of violence under § 16(b) is "at least recklessness," In re Ramos at 345. It also reaffirmed a prior ruling holding that § 16(b) does not require specific intent to do violence. Id. at 345-46; Matter of Alcantar at 813-14.

Omar believes that the Sentencing Commissions's change in its guideline definition of crime of violence informs the meaning of § 16(b), and he cites several cases to that effect. See, e.g., Dalton, 257 F.3d at 207; Bazan-Reyes, 256 F.3d at 608; Chapa-Garza, 243 F.3d at 925-26; Parson, 955 F.2d at 866. The sentencing guidelines originally defined crime of violence by referencing § 16, see USSG §4B1.2(1) (June 1988),[10] but in 1989 the Commission adopted a different definition. See USSG §4B1.2(1) (Nov. 1990). At that time it decided to borrow the definition of violent felony in 18 U.S.C. § 924(e)(2)(B), in order to "clarify the definitions of

---

[10]In 1997, the Sentencing Commission renumbered USSG §4B1, and the former §4B1.2(1) became §4B1.2(a). USSG App. C, amend. 568.

crime of violence…used in this guideline." USSG App. C, amend. 268.[11] The new definition of crime of violence in USSG §4B1.2(a)(1) remained almost identical to § 16(a), except that it omitted any reference to property. The other section of the new definition in USSG §4B1.2(a)(2) differed from § 16(b), however, by including several specified crimes as well as those involving "conduct that presents a serious potential risk of physical injury to another." Omar claims that the Commission's decision to borrow from the definition of violent felony in § 924(e)(2)(B)(ii), and to eliminate the words "that physical force…may be used," clarifies what Congress intended in enacting § 16(b) and shows that the eliminated words were meant to convey an intent requirement. We disagree.

The statute passed by Congress containing the definition for violent felony and its later adoption by the Sentencing Commission in 1989 as part of its guideline definition for crime of violence do not show what Congress intended when it previously enacted § 16(b). If Congress had intended to substitute the definition of violent felony for the § 16 definition of crime of violence, it could easily have done so. Congress could also have stated that its later enacted violent felony definition informed the meaning of its earlier crime of violence definition. It did neither. The Sentencing Commission is an independent agency within the judicial branch, 28

_____

[11]After the guidelines change in 1989, crime of violence was defined as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year that –

> (1) has as element the use, attempted use, or threatened use of physical force against the person of another, or
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."

USSG §4B1.2(a) (previously USSG §4B1.2(1)).

-15-

U.S.C. § 991(a); it is not a part of the legislative branch. The fact that Congress did not affirmatively move to prevent one of the Commission's amendments to the sentencing guidelines from taking effect, see 28 U.S.C. § 994(p), cannot be understood to show any intent to change the meaning of its own legislation. The language of § 16(b) is clear, and its application requires no search through attenuated legislative history.[12] Blum v. Stenson, 465 U.S. 886, 896 (1984).

IV.

The Minnesota offense of criminal vehicular homicide fits within the § 16(b) definition of crime of violence because the inherent nature of this felony is such that it involves a substantial risk that physical force may be used against another person. We reject Omar's claim that § 16(b) requires an element of intent for a crime of violence and his attempt to read more into the words "may be used" than they can fairly support. The felony of involuntary manslaughter has been consistently held to be a crime of violence under a statutory definition almost identical to § 16(b) even though it is not an intentional crime. Even if we were not bound by our precedent in Moore, none of the conflicting cases dealing with driving under the influence offenses controls the issue here which turns on the nature of a different offense.

---

[12]Omar also points to a discussion on legislative history related to driving under the influence offenses, but not addressing criminal vehicular homicide. See Karen Crawford and Thomas Hutchins, Ignoring Congress: The Board of Immigration Appeals and Crimes of Violence in *Puente* and *Magallanes,* 6 Bender's Immigr. Bull. 67 (2001). Legislative debates distinguishing "petty offenses" such as traffic violations from "dangerous crimes," id. at 70-72, do little to suggest that criminal vehicular homicide should fall into the former category. Omar claims there is relevant history connected to the passage of legislation dealing with pretrial detention and bail reform, diplomatic immunity, and even proposals never enacted, but he points to no history specific to § 16(b) which shows that Congress meant it to apply only to intent crimes.

-16-

Criminal vehicular homicide, like involuntary manslaughter, is an offense that always "inheres the substantial risk that physical force will be used in its commission," Moore, 38 F.3d at 981, because it has always resulted in another's death. It thus meets the definition of a crime of violence under § 16(b) and is an aggravated felony under 8 U.S.C. § 1101(a)(43)(F).

Because Omar's convictions were both for an aggravated felony, we have no jurisdiction to review the order of removal against him and his petition is dismissed.

HEANEY, Circuit Judge, dissenting.

I respectfully dissent. I believe that the term "crime of violence" and its definition in 18 U.S.C. § 16 are ambiguous when applied to the offense of criminal vehicular homicide, as defined in Minn. Stat. § 609.21, subd. 1(4). Because there is a "longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien," United States v. St. Cyr, 533 U.S. 289, 320 (2001) (quoting INS v. Cardoz- Fonseca, 480 U.S. 421, 449 (1987)), I would reverse the decision of the Board of Immigration Appeals.

Omar pled guilty to the charge that he had "cause[d] the death of a human being not constituting murder or manslaughter as a result of operating a motor vehicle . . . while having an alcohol concentration of .10 or more, as measured within two hours of the time of driving." Minn. Stat. § 609.21, subd.1(4). The majority asks whether this offense fits within the statutory definition of a "crime of violence." Because Omar is an alien, however, I believe the correct query is whether this offense unambiguously is a "crime of violence." Stated differently, may a violation of Minn. Stat. § 609.21, subd.1(4) unambiguously be defined as a felony that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense?" See 18 U.S.C. §

16(b). A careful examination of the statutory language used in § 16(b) demonstrates that the provision does not unambiguously apply to criminal vehicular homicide.

In concluding that § 16(b) is unambiguous, the majority does not analyze any of the terms Congress employed in the statute. Rather, it loosely uses comparable phrases such as "application of physical force" and "if harm results." This analysis contradicts the settled principle that "a statute must, if possible, be construed in such a fashion that every word has some operative effect." United States v. Nordic Village, Inc, 503 U.S. 30, 36 (1992); see also Market Co. v. Hoffman, 101 U.S. 112, 115-116 (1879) ("We are not at liberty to construe any statute so as to deny effect to any part of its language. It is a cardinal rule of statutory construction that significance and effect shall, if possible, be accorded to every word. . . . '[A] statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.' This rule has been repeated innumerable times.") (citation omitted).

Section 16(b)'s use of the phrases "physical force" and "may be used" render its application to criminal vehicular homicide ambiguous. Physical force can have numerous meanings. It can be defined as "physical strength exerted on an object or person; . . . violence" or it may be defined more broadly as an "influence that produces or tends to produce a change" See The New Shorter Oxford English Dictionary, 3d. ed., Vol. 1 at 998 (Clarendon Press 1993). The majority employs a broad physical science definition of force rather than equating it with violence. See supra ("A vehicle can exert considerable physical force because of its structure, weight, and capacity for motion and velocity"). It is unclear from the text of § 16(b), however, whether Congress intended the term "force" to connote some type of violence or whether "force" has a much wider meaning. At least three courts have determined that the term "physical force" in § 16(b) implies a violent force. See Sareang Ye v. INS, 214 F.3d 1128, 1133 (9th Cir. 2000) ("the force necessary to constitute a crime of violence . . . must actually be violent in nature"); Solorzano-

-18-

Patlan v. INS, 207 F. 3d 869, 875 n.10 (7th Cir. 2000)); United States v. Rodriguez-Guzman, 56 F.3d 18, 20 n.8 (5th Cir. 1995) ("The clear import of defining a 'crime of violence' is that 'force' as used in the definition is synonymous with destructive or violent force."). I believe the Second Circuit accurately recognized the ambiguity in this term when it stated:

> [W]e believe the language of § 16(b) fails to capture the nature of the risk inherent in drunk driving. This risk is, notoriously, the risk of an ensuing accident; it is not the risk that the driver will "use physical force" in the course of driving the vehicle. Indeed, in the context of driving a vehicle, it is unclear what constitutes the "use of physical force." The physical force used cannot reasonably be interpreted as a foot on the accelerator or a hand on the steering wheel. Otherwise, all driving would, by definition, involve the use of force, and it is hard to believe that Congress intended for all felonies that involve driving to be "crimes of violence."

Dalton v. Ashcroft, 257 F.3d 200, 206 (2d. Cir. 2001). Section 16(b)'s use of the term "physical force" is ambiguous when read in the context of drunk driving.

The inclusion of the verb "use" further complicates the application § 16(b) to Omar's conviction. As the Seventh Circuit explained, "[i]n ordinary English, the word 'use' implies intentional availment." United States v. Rutherford, 54 F.3d 370, 372-73 (7th Cir. 1995) (noting that "use" is defined as "[t]he act of employing a thing for any (esp. a profitable) purpose") (quoting The Oxford English Dictionary, 2d. ed., vol. XIX at 350 (Clarendon Press 1989)); see also Bazan-Reyes v. INS, 256 F.3d 600, 608 (2001) ("the term 'use of physical force' . . . implies 'an intentional availment rather than the mere application or exertion of force.'") (quoting Rutherford, 54 F.3d at 372-373). The Seventh Circuit reasoned that:

Force is exerted in many instances where it is not employed for any particular purpose. For example, earthquakes and avalanches involve the exertion of a tremendous amount of force . . . . Referring to a randomly occurring avalanche as a "use" of force would torture the English language. Likewise a drunk driving accident is not the result of plan, direction, or purpose. . . . A drunk driver who injures a driver would not describe the incident by saying he "used" his car to hurt someone. . . . No availment of force in order to achieve an end is present in a drunk driving accident. Thus, under a pure plain language approach, one would be hard-pressed to argue that [a drunk driving] accident involved the use of force.

Rutherford, 54 F.3d at 372.

A comparison of the majority's opinion with the Seventh Circuit's analysis in Rutherford and Bazan-Reyes indicates that the term "used' in § 16(b) is ambiguous. Indeed, the circuits are split over the issue of whether drunk-driving can be referred to as the "use of physical force." Compare Tapia Garcia v. INS, 237 F.3d 1216, 1222-23 (10th Cir. 2001) (holding that an Idaho conviction for DUI is a crime of violence under § 16(b)) with United States v. Trinidad-Aquino, 259 F.3d 1140, 1144-46 (9th Cir. 2001) (holding California conviction for DUI causing bodily injury is not a crime of violence under § 16 because the phrase "use . . . against" implies a volitional act and California statute could be violated through mere negligence); Dalton v. Ashcroft, 257 F.3d at 207-08 (noting that risk of injury is distinct from the risk that physical force may be used and holding that a DWI conviction under New York law does not constitute a crime of violence); Bazan-Reyes, 256 F.3d at 610-612 (vacating deportation orders for criminal vehicular homicide and drunk driving because the offenses did not constitute crimes of violence under § 16(b)). This circuit split alone demonstrates the ambiguity of the statute.[13]

_____

[13]Recent decisions by the Board of Immigrations Appeals and the Sentencing Commission further demonstrate the ambiguity of the language in § 16(b). The Board of Immigration Appeals recently issued a decision holding that drunk driving under

The majority tries to distinguish itself from the other circuits that have faced this issue by noting that its sister circuits did not carefully analyze the issue of vehicular homicide. It concludes that because a violation of Minn. Stat. § 609.21 always results in the death of another, "there are no circumstances where the offense of criminal vehicular homicide does not present a substantial risk that physical force will be used to injure another." I believe the majority recklessly equates the phrase "risk that physical force may be used" with language Congress did not employ in § 16(b), "risk that injury may occur." Many offenses involve a substantial risk of injury but do not involve the use of force. Dalton, 257 F.3d at 207. Crimes of gross negligence or reckless endangerment, such as leaving a child alone in a bathtub or in a hot car, involve the risk of injury without the use of force. See id. Furthermore, "[a]lthough an accident may properly be said to involve force, one cannot be said to use force in an accident as one might use force to pry open a heavy, jammed door." Id. at 206 Just because criminal vehicular homicide always results in an injury does not mean that force will always be used against another in its commission.

I recognize that if this case did not involve the deportation of an alien, this court's decision in United States v. Moore, 38 F.3d 977 (8th Cir. 1994), would control the outcome. In this case, however, unlike in Moore, we must ask whether the statute is ambiguous. See INS v. St. Cyr, 533 U.S. at 320. The Supreme Court has stated that "the deportation of an alien is a drastic measure. . . . [S]ince the stakes are

---

the Massachusetts General Laws is not a crime of violence. In re Ramos, 23 I. & N. Dec. 336 (BIA 2002). In so holding, the Board withdrew an earlier decision that a drunk driving conviction alone is sufficient to constitute a crime of violence under § 16. Id. at 346. In addition, in 1989, the Sentencing Commission changed its definition of "crime of violence" to "clarify" the term. USSG App. C., amend. 268. The Commission deleted a reference to 18 U.S.C. § 16 and instead borrowed the definition in 18 U.S.C. § 924(e)(2)(B), which can be triggered when conduct presents a "risk of physical injury to another." See id.; see also USSG §4B1.2(1) (Nov. 1990). Although these decisions do not control this court's decision, they demonstrate the uncertainty that exists regarding § 16's interpretation.

considerable for the individual, we will not assume that Congress meant to trench on his freedom beyond that which is required by the narrowest of several possible meanings of the [statute]." Fong Haw Tan v. Phelan, 333 U.S. 6, 10 (1948) (citation omitted). The varying interpretations of the language in § 16(b) demonstrate that the statute is ambiguous as applied to Omar's conviction for criminal vehicular homicide. Under the narrowest possible interpretation of § 16(b), Omar did not commit a crime of violence; therefore, Omar should not be removed from this country.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.