**UNITED STATES of America**

v.

**Criss Ervin DUNCAN.**

**No. 3:03 CR 0057–2 AS.**

United States District Court,
N.D. Indiana,
South Bend Division.

March 26, 2004.

John C Hamilton, Hamilton Law Firm, South Bend, IN, for Defendant.

Criss Duncan, Shipshewanna, IN, pro se.

Lesley J. Miller Lowery, William T Grimmer, U.S. Attorney's Office–SB/IN, South Bend, IN, for Plaintiff.

### SENTENCING MEMORANDUM

ALLEN SHARP, Judge.

## I. Procedural History

The Defendant, **CHRIS ERVIN DUNCAN,** was charged in a two-count Indictment returned by a grand jury in this district on June 12, 2003. On October 9, 2003, the Defendant was charged in a six-count Superceding Indictment. The Defendant proceeded to a jury trial which commenced on December 1, 2003, and on December 8, 2003, the jury returned a verdict of guilty to counts 3s, 4s, 5s, and 6s.

Count 3s charges the Defendant with a violation of 18 U.S.C. § 2113(a) and (d), Knowingly by Force, Violence and Intimidation Taking from the Person of Another Money Belonging to and in the Care, Custody and Control of a Bank; Count 4s charges the Defendant a violation of 18 U.S.C. § 924(c), Knowingly Using and Carrying a Firearm During and in Relation to a Crime of Violence; Count 5s charges the Defendant with a violation of 18 U.S.C. § 844(i) and 2, Malicious Damage by Fire to a Vehicle, and 18 U.S.C. § 2, Aiding and Abetting; and Count 6s charges the Defendant with a violation of 18 U.S.C. § 922(g)(1) and 924(a)(2), Unlawful Transport of Firearms, Etc. and Penalties for Firearms.

Because the offense occurred after November 1, 1987, the Sentencing Reform Act of 1984 and the United States Sentencing Commission Guidelines (Guidelines), as

amended October 27, 2003, apply to this sentencing, pursuant to *Miller v. Florida,* 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987). However, because the offense conduct took place before October 27, 2003, the effective date for the current Guidelines, a comparison has been made between the relevant Guidelines and this Court has determined that the Guidelines in effect at the time the offense was committed produces the least onerous sentence. Therefore, the 2002 edition, effective April 30, 2003, is employed in this case.

## II. The Presentence Report

The Defendant, defense counsel, and the Government have reviewed the presentence report, as has the Court. The Government reported no objections to the presentence report. The Defendant objected to numerous paragraphs, including paragraphs describing the offense conduct. The Court will address each of these objections herein. All other paragraphs of the presentence report not specifically addressed in this Memorandum are adopted by the Court as findings of fact and statements of reason for imposition of sentence in this case. Specifically, the Court adopts paragraphs 8 through 20 describing the offense conduct, and paragraphs 21 through 22 describing relevant conduct as the factual basis for this sentence, except those facts to which the Defendant objects. On all disputed facts, the Court will make a specific factual finding.

## III. The Plea Agreement

There is no plea agreement in this case as the Defendant went to trial.

## IV. Facts Relevant to Sentencing

■ Before determining the Defendant's offense level, the Court must first resolve the factual disputes. The burden is on the Government to establish the facts relevant to the sentencing factors by a preponderance of the evidence. U.S.S.G. § 6A1.3, commentary. It is a lower evidentiary standard than at trial, and the Court may consider evidence that was not admissible at trial under the Federal Rules of Evidence, as long as the evidence has sufficient indicia of reliability to support its probable accuracy. Id. Only if a sentencing factor increases the Defendant's sentence above the statutory maximum does it have to be presented to a jury and established beyond a reasonable doubt. *See, Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

■ The most significant factual dispute is over whether the assault style rifle carried by the Defendant during the bank robbery should be categorized as a "machine gun" as recommended by the presentence report in paragraphs 10 and 18. The mandatory minimum sentence for a semi-automatic rifle is ten (10) years. The mandatory minimum for a machinegun is thirty (30) years. The Defendant states that no actual proof was established at the trial that the guns were in fact machineguns.

The Government points to the testimony of Ralph Berkey Jr., who testified at the trial that the semi-automatic assault weapons that Duncan and Berkey carried into the Bank had been altered to make them fully automatic. Gov.'s Mem. in Supp.; Trial Transcript, Berkey Testimony, page 25. Berkey testified that the weapons could fire single shots or multiple shots with one pull of the trigger. Id. In addition, Larry Joe Ellis testified that he had worked on several of the assault rifles to make them fully automatic for Berkey. Gov.'s Mem. in Supp.; Ellis Testimony at pp. 17–18.

Ellis also testified that after the robbery, when Duncan and Berkey left the black Mazda at his house with weapons in it, he "pulled the pins apart, took the bolts out and put different bolts in" because two of the guns were registered in his name.

Id. at pp. 23–24. The bolts are what converted the guns from semi-automatic to fully automatic. Id. at p. 18, 23–24. Ellis testified that the guns in the back of the Black Mazda had been made fully automatic about two to four months prior to the Leesburg robbery, and were still fully automatic when he found them in the back of Mazda after the robbery until he changed the bolts. Id. at pp. 23–24.

18 U.S.C. § 921 defines machinegun by referencing the National Firearms Act, 26 U.S.C. 5845(b), which defines machinegun as follows: "The term 'machinegun' means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger."

In summary, the Court heard the testimony of two witnesses that the semi-automatic assault rifles carried by Duncan and Berkey to rob the National City Bank had been altered to make them fully automatic. Berkey testified that these guns could fire multiple shots with a single pull of the trigger. The Court found Berkey to be a credible witness. Even though he did not use the word "machinegun," his testimony described a weapon that fits the definition of "machinegun" in the statute.

Based on this testimony, the Court finds that the weapons carried into the Bank by the Defendant and Berkey were altered assault rifles that would qualify as machine guns for purposes of sentencing. The Court would have no difficulty making this same finding even if the evidentiary standard were much higher than the required preponderance.

The Defendant also objects to the statement that he was "involved in illegally altering the assault rifle's trigger mechanism which made the weapons fully automatic with the ability to fire 100 rounds." PSI ¶ 18; Addendum at IV(A). He claims that the evidence made it clear that Ellis and Berkey were responsible for the attempt to alter the guns. Id. The Defendant also claims that their efforts were unsuccessful. Id. Whether the Defendant was "involved in" altering the guns, or simply carried one into the Bank in connection with the robbery is irrelevant. Similarly, his argument that their attempts to alter the guns was unsuccessful is irrelevant, based on the statutory definition of machinegun, because the guns were "designed to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." The statute does not require success. *See, United States v. McGiffen*, 267 F.3d 581, 590 (7th Cir.2001)(affirming enhancement for machinegun where weapon was designed to shoot in fully automatic mode, even if not fully operational) (citations omitted).

The Defendant also objected to a statement about the number of customers present in the bank at the time of the robbery. This does not appear to have any bearing on the Defendant's sentence, but the Government responded with evidence that there was at least one other customer in the bank. The Court, therefore, finds that the Government has met its burden on this issue as well.

The Defendant objected to a statement about a photograph found in Berkey's truck, claiming that the statement should not be included because the photograph was not entered into evidence at the trial. However, as already noted, the Federal Rules of Evidence do not apply at sentencing, and the Court can consider the photograph even if not entered into evidence. However, as with the previous issue, it does not affect the Defendant's sentence.

■ The Defendant's next objection is to paragraphs 15, 19 and 25, relating to the amount of money taken from the bank. The Bank initially calculated the loss amount at $43,744. He notes, correctly,

that approximately $46,000 was recovered in his possession and in his girlfriend's apartment. The Government presented this money into evidence at the trial. However, according to the Government, this money has not been returned to the Bank yet, therefore, the Bank has received little or no restitution to date. The Bank is entitled to full restitution, but it can only recover once. Right now, that money remains in evidence. Eventually, it will be returned to its rightful owner, at which time the Defendant's obligation to make restitution will be fulfilled.

However, the Court notes that the amount of money recovered is only relevant on the issue of restitution. Even though the money was fully recovered, the Defendant intended to take the full amount. Therefore, the full $43,744 is used for purposes of calculating the Defendant's offense level pursuant to U.S.S.G. § 2B3.1.

The Defendant also objected to paragraph 20, claiming that it put him in a false light. Paragraph 20 states, "a search of a black Mazda truck belonging to Criss Duncan also produced several assault type weapons and a camouflage type vest" and that "one of the rifles had Berkey's blood on it." The Defendant claims that Ellis testified at trial that he moved guns and other material into Criss Duncan's Mazda truck before it was searched.

The Government disagrees with that assertion, and has ordered a transcript of the testimony before sentencing. According to the Government, Ellis testified that the weapons were in the Mazda when it was brought to Ellis after the bank robbery and that Duncan was with Berkey when he asked Ellis to take care of the stuff in Duncan's Mazda. After examining the transcript of Ellis' testimony, the Court finds that it supports the Government's version of the facts on this issue. The Government has met its burden to establish that the guns were in the Defendant's Mazda truck when it was left with Ellis.

## V. The Defendant's Offense Level

■ The Defendant has made several objections to the way the Probation Officer calculated his base offense level and enhancements. Calculating the Defendant's base offense level is a complicated process in this case because he was convicted on four separate counts. Calculating his base offense level and enhancements depends on how those counts are characterized. The burden of proof is on the Government, again by a preponderance of the evidence, to establish what his base offense level should be, and whether a certain enhancement applies.

Count 3s is based on the bank robbery, Count 4s is based on his carrying a weapon during the bank robbery, and Count 5s is based on the burning of the getaway vehicle as part of the Defendant's efforts to escape detection for the robbery. Count 6s is based on the discovery of seven firearms in the Defendant's home when it was searched approximately four days after the robbery, and three firearms discovered in the Defendant's Mazda truck. PSI Addendum, at VIII(B).

### A. Counts 3s and 5s

■ First, the Probation Officer recommends grouping Counts 3s and 5s. Grouping is appropriate where the counts involve the same victim and two or more acts or transactions connected by a common criminal objective, or common scheme or plan. U.S.S.G. § 3D1.2(b). Here, the burning of the vehicle was part of the Defendant's plan to avoid detection for the bank robbery, and therefore qualifies for grouping.

The Guideline for a violation of 18 U.S.C. § 2113(a) and (d) is found in U.S.S.G. § 2B3.1, which provides for a base offense level of twenty (20). A two (2) level enhancement is added pursuant to

§ 2B3.1(b)(1) for taking the property of a financial institution, and an additional one (1) level under § 2B3.1(b)(7) because the loss amount was greater than $10,000. This gives him a subtotal offense level of twenty-three (23).

 The presentence report also recommends a three (3) level enhancement under U.S.S.G. § 3A1.2(a) because the case involved an official victim, and a two (2) level enhancement for Obstruction of Justice under U.S.S.G. § 3C1.2, because the Defendant committed reckless endangerment during his flight. The Defendant points out that both of these enhancements are based on the same facts, and claims that adding them both is impermissible double counting.

Resolving this issue involves a brief review of the facts. After the robbery, the Defendant and Berkey escaped in a maroon van. PSI at ¶ 12. This van was next seen burning in a wooded area several miles from the bank. Id. at ¶ 13. Town Marshall David Hobbs heard about the robbery, and left in his vehicle hoping to intercept the maroon van. Id. at ¶ 22. He stopped at an intersection with his lights on and got out of his vehicle to ask the Defendant if he had seen the maroon van. Id. By this time, the Defendant and Berkey had changed vehicles and were no longer in the getaway vehicle. Nevertheless, Berkey raised up from the floor where he was hiding and began firing an assault rifle at Hobbs. Id.

The Government admits that both enhancements cannot be applied for the same conduct, shooting at Hobbs, citing *United States v. Swoape*, 31 F.3d 482, 483 (7th Cir.1994). However, the Government points to other conduct that might support the reckless endangerment enhancement, for example, the arson of the van, and the fact that another witness was in the area when Berkey started shooting.

The Court agrees that basing an enhancement for reckless endangerment and for an official victim based on Berkey's shooting at Officer Hobbs during the escape raises serious double jeopardy concerns. However, if Officer Hobbs is removed from the calculation, the evidence supporting an Obstruction of Justice enhancement for reckless endangerment is weak. The Court finds that it is not sufficient to support an additional enhancement, and will apply only the enhancement for an official victim pursuant to § 3A1.2(a) for the Defendant's part in shooting at Officer Hobbs. This makes his final adjusted offense level on Counts 3s and 5s a **twenty-six (26)**.

### B. Count 6s

 The Guideline for Count 6s, a violation of 18 U.S.C. § 922(g) is found in U.S.S.G. § 2K2.1. According to the presentence report, the Defendant's base offense level on this count should be twenty-six (26) because he has two previous felony convictions for a crime of violence. One was a conviction for Voluntary Manslaughter in 1983, the second a conviction in Colorado for Driving Under the Influence in 1999. The Defendant agrees that the Voluntary Manslaughter conviction qualifies as a crime of violence, but he challenges the use of a DUI as a crime of violence.

Both parties discuss a Seventh Circuit case, *United States v. Rutherford*, 54 F.3d 370 (7th Cir.1995), in which the Court held that felony Driving Under the Influence qualifies as a crime of violence under the "otherwise" clause of the statute. U.S.S.G. § 4B1.2(1) defines "crime of violence" as any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that ... (ii) is burglary of a dwelling, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious

potential risk of physical injury to another." The Seventh Circuit reasoned that the dangers of drunk driving are well-known and well documented, and therefore satisfy the "serious risk" standard of the "otherwise" clause. *Rutherford*, 54 F.3d at 376–77.

However, the Seventh Circuit noted that this holding would not turn every drunk driving conviction into a crime of violence under § 4B1.2 because most drunk driving offenses are not punishable by more than one year of imprisonment. *Id.* at 377, n. 17. Therefore, the first question before the Court is the statutory scheme under which the Defendant was convicted for drunk driving, either for the 1993 conviction in Elkhart, Indiana, or for the 1999 conviction in Colorado.

The Presentence Report states that the 1993 offense was filed as a felony, but he was sentenced to exactly one year. The Report does not state that he was convicted of a felony, and his sentence does not meet the "exceeding one year" standard. The Presentence Report also includes a conviction from Colorado in 1999 for Driving While Intoxicated, but he was only given a sentence of thirty (30) days in jail. Without further information about the statute that Defendant was sentenced under, the Court cannot find that either of these offenses qualifies as a felony crime of violence.

■ The Guideline for Count 6s, a violation of 18 U.S.C. § 922(g) is found in U.S.S.G. § 2K2.1(a)(3), for a firearm described in 18 U.S.C. § 921(a)(30), and one previous felony conviction for a crime of violence, which establishes a base offense level of **twenty-two (22)**. The PSR recommends a four (4) level enhancement under § 2K2.1(b)(1)(B) based on the number of weapons involved on this Count. Seven (7) weapons were found in the Defendant's home, and three (3) more in his vehicle, for a total of ten (10) weapons.

The PSR also recommends a four (4) level enhancement pursuant to § 2K2.1(b)(5), because the Defendant used or possessed any firearm or ammunition in connection with another felony offense. The Defendant objects to this enhancement because the Government has not established that the weapons in this count were used in connection with another felony offense. The government agrees with the Defendant that none of the firearms seized from the Defendant's house were in anyway connected to the assault on Hobbs. PSI Addendum at ¶ VIII(B). However, the Government does claim that the weapons in Duncan's Mazda were used in connection with the bank robbery, and to shoot at Officer Hobbs.

The Court has studied the Superceding Indictment for Count 6s, and can find nothing in it to support the Defendant's claim that Count 6s was based exclusively on the guns found in Defendant's house. It charges him with being a felon in possession. However, the basis for Count 6s, Felon in Possession, cannot be the same as the basis for 4s, Knowingly Use and Carry a Firearm During and in Relation to a Crime of Violence. The three guns found in the Defendant's Mazda appear to be the same weapons that were used to rob the Bank, and therefore provide the basis for Count 4s. Those guns cannot be included again in Count 6s because of double jeopardy considerations. That leaves the seven (7) guns found in the Defendant's house to form the basis for Count 6s.

■ The Government has suggested that the Defendant was accountable for the gun that was used to fire at Hobbs, and based on ballistic reports, it appears that the gun used to fire at Hobbs has not been located. *See*, PSR ¶ 22. It is possible, however, that Berkey used the same gun for the robbery and to shoot at Hobbs. It is a stretch to add this unrecovered gun in as an additional gun for Count 6s based in

this evidence, and then use it as a basis for an enhancement under § 2K2.1(b)(5). Therefore, the Court will use only the seven (7) guns found at the Defendant's home as the basis for this count.

Seven (7) guns requires the addition of two (2) levels pursuant to 2K2.1(b)(1)(A), giving the Defendant an adjusted offense level of **twenty-four (24).** An additional enhancement for using these guns (the ones found in the Defendant's house) in connection with another felony offense is not supported by the evidence.

### 3. Multiple–Count Adjustment

The Court must also make a multiple-count adjustment under § 3D1.4 for Counts 3s, 5s, and 6s. The Court must count as one unit the most serious count, Count 3s and 5s with an adjusted offense level of **twenty-six (26).** Count 6s, with an adjusted offense level of twenty-four (24), also counts as one unit pursuant to § 3D1.4(a), for a total of two (2) units, which requires the addition of two (2) offense levels to the highest offense level. The result of these calculations is that the Defendant has an adjusted offense level of **twenty-eight (28)** on these three counts.

### 4. Count 4s

This Count must be calculated separately because it carries a mandatory minimum sentence that must be served consecutive to any other sentence he receives. Based on the Court's factual finding that the firearm used to commit this offense was a machinegun, the mandatory minimum sentence on this count is **thirty (30)** years, pursuant to 18 U.S.C. § 924(c)(B)(ii), On this count, the Guideline sentence is the statutory minimum. U.S.S.G. § 2K2.4(b).

### 5. Criminal History

The Defendant has a total of five (5) criminal history points: three (3) for a Voluntary Manslaughter conviction in 1983, under § 4A1.1(a); one (1) for a conviction in 1993 for Driving While Intoxicated, under § 4A1.1(c); and one (1) for a conviction for Driving While Intoxicated in 1999, also under § 4A1.1(c). The PSR recommends finding that the Defendant is a career offender based on the Manslaughter conviction and one of the Driving While Intoxicated convictions. The Court has already ruled on that issue, and for the reasons given above, does not find this Defendant to have two previous felony convictions for crimes of violence. A criminal history score of five (5) places him in criminal history category III.

### V. The Defendant's Sentence

With a total offense level of twenty-eight (28) and a criminal history of III, the applicable Guideline range for imprisonment on Counts 3s, 5s and 6s is 97–121 months. The Guideline Range on Count 4s is a mandatory minimum of thirty years, or 360 months, for a total combined sentencing range on all counts of 457–481 months. Because the applicable guideline range is in Zone D, the Defendant is not eligible for probation.

In my thirty plus years as a federal judge, because of the mandatory thirty years for using a machinegun, this is without a doubt the longest sentence this Court has given for a bank robbery. A sentence at the low end of the range still places him in federal custody for almost forty years, and seems more than adequate. The Defendant is hereby sentenced to a single term of imprisonment of 457 months, to be followed by a single term of three (3) years of supervised release as required by 21 U.S.C. § 841 and U.S.S.G. § 5D1.2(b). The conditions of supervised release shall include the fifteen (15) standard conditions as listed under U.S.S.G. § 5D1.3(c) as well as the additional conditions listed on pages 27–28 of the pre-sentence report.

This sentence is to commence immediately. The Defendant shall receive jail

credit time for time served since his incarceration on this offense. The court finds that this sentence sufficiently punishes this Defendant for his criminal conduct and therefore satisfies the purposes of sentencing as set forth in 18 U.S.C. § 3553(a).

### VI. Fines, Restitution, Fees

The applicable fine range under U.S.S.G. § 5E1.2(c)(3) is from $20,000 to $200,000. Based on the Defendant's financial information, the court imposes no fine. The court must and does assess a special assessment fee of $400.00.

Restitution is mandatory in this case under 18 U.S.C. § 3663, which requires the court to order restitution without consideration of the defendant's economic circumstances. 18 U.S.C. § 3663. Therefore, the Court orders this Defendant to pay restitution in the amount of $43,744. As noted above, a total of $46,000 was recovered and presented as evidence at this Defendant's trial. That money should be returned to the victim, offsetting the Defendant's obligation to make restitution. However, at the time of sentencing, the Bank has not yet been reimbursed for its losses, so restitution must be ordered. Payments must be forwarded to the United States District Court Clerk's Office at 204 South Main Street, South Bend, Indiana, 46601, for payment to the victim, National City Bank in Leesburg, Indiana.

The clerk shall prepare judgment. The clerk shall also provide a copy of this Sentencing Memorandum to the United States Probation Department for forwarding to the United States Sentencing Commission. *The Defendant is hereby notified that he has a right to appeal this sentence and must file a notice of appeal within ten days of this order.*

**IT IS SO ORDERED.**